United States District Court
District of Connecticut
FILED AT   NEW HAVEN

Roberta D. Tabora, Clerk   6/17/2011
By:
Deputy Clerk

United States District Court
District of Connecticut

THE ESTATE OF FREDERICK MALI and  :
LUCRETIA MALI,                    :
           *Plaintiffs*,          :
                                 :
                                 :
V.                                :  No. 3:06-CV-01475 (EBB)
                                 :
                                 :
FEDERAL INSURANCE COMPANY         :
           *Defendant*.           :

### RULING ON DEFENDANT'S RENEWED MOTIONS IN LIMINE AND MOTIONS TO PRECLUDE TESTIMONY

#### I.   INTRODUCTION

This case arises out of an insurance dispute between Lucretia Mali and her late husband Frederick Mali ("Plaintiffs"), and their insurance company, Federal Insurance Company ("Defendant"), concerning a claim the plaintiffs filed after a fire destroyed their property located at 139 Grantville Road, Winsted, Connecticut ("Grantville property") on April 1, 2005. At the time of the fire, the Plaintiffs held insurance coverage through the Defendant in the form of a Masterpiece Deluxe House Coverage Policy ("Policy"). As a result, the plaintiffs filed a claim with the defendant.

In the Plaintiffs' operative complaint, they seek a declaratory judgment decreeing the scope and coverage of the

1

Policy and the Defendant's obligations thereunder (count one). The plaintiffs also allege breach of contract (count two) and breach of the covenant of good faith and fair dealing (count three). The Defendant asserts several affirmative defenses including, <u>inter alia</u>, the Plaintiffs' alleged noncompliance with the terms of the Policy.

Pending before the Court is the Defendant's Motion in Limine Concerning Loss Reserves [Doc. #145], Motion in Limine Concerning Existence of a 1988 Appraisal [Doc. #146], Motion in Limine to Preclude Testimony of Attorney Theodore Tucci [Doc. #147] and Motion in Limine to Preclude Testimony of Attorney Michael O'Connell [Doc. #148]. On September 23, 2010, the Court denied these motions without prejudice to renewal at the time of trial. Jury selection is currently scheduled for July 12, 2011. Accordingly, the Defendant has renewed its motions. For the foregoing reasons, the Defendant's motions are GRANTED. The Court will address each motion in turn.

## II. **DISCUSSION**
### A. Loss Reserves

The Defendant contends that evidence concerning its loss reserves is inadmissible. The Court agrees.

Many states require insurers to allocate monetary reserves sufficient to ensure that adequate resources are available to

cover potential liabilities. Connecticut is no exception; Connecticut General Statutes § 38a-76(a) requires each insurance company transacting business in the state to "maintain reserves equal in amount to its liability under all its policy contracts . . . for the purpose of adequately protecting the insured or securing the solvency of such company." Such reserve funds are sometimes referred to as a "loss reserve."

In the present case, the Plaintiffs aver that on September 19, 2005, James Mandolfo, a claims supervisor for the Defendant, recommended increasing the loss reserve for the Plaintiffs' claim from $570,000 to $1,550,000. In an entry in an internal claims file, Mandolfo explained that this recommendation was based on "perceived exposures with reserved funds." In his calculation supporting this recommendation, Mandolofo estimated that the cost of rebuilding the barn house was $1,030,000. Three weeks later, the Defendant offered the Plaintiff $831,653.63 to rebuild the barn and lowered the amount of the loss reserve. The Plaintiffs now seek to offer evidence regarding the initial amount of the loss reserve as proof that the Defendant "knew that its offers to settle plaintiffs' claim were woefully inadequate at the time they were made, and that accordingly, defendant breached the covenant of good faith and fair dealing."

Rule 403 of the Federal Rules of Evidence provides that even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Defendant claims that "allowing evidence of [Defendant's] loss reserves will unduly prejudice [the Defendant], and will result in confusion, undue delay and waste of time as [the Defendant] makes an effort to rebut the impermissible inference that the loss reserves equate to the true value of the claim." In essence, the Defendant argues that allowing the loss reserve information into evidence will lead to a wasteful and meaningless mini-trial. The Court agrees.

If evidence regarding the Defendant's loss reserves is admitted, the trial will be diverted from the central issues in the case to a complicated inquiry into the nature, statutory and regulatory requirements for, and proprietary methods of establishing loss reserves. Cf. Manko v. United States, 63 Fed. Appx . 570, 572-573 (2d Cir. 2003) (holding that in prosecution for making false tax returns and aiding and abetting preparation of false tax returns, probative value of evidence of settlement between defendants and Internal Revenue Service concerning civil case was substantially outweighed by danger of confusion of

4

issues and misleading the jury). As the Defendant correctly points out, setting loss reserves is not an exact science and is a highly variable task primarily because loss reserves are designed to protect against *potential* losses. See <u>Silva v. Basin Western, Inc.</u>, 47 P.3d 1184, 1189 (Co. 2002). For this reason, "such estimates . . . do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." <u>Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.</u>, 117 F.R.D. 283 (D.D.C. 1986). Indeed, it is evident here, based on the discovery information presented by the Plaintiffs, that Mandolfo's loss reserve recommendation was not based on a thorough or conclusive consideration of the facts. Rather, his recommendation was based on only the barest of estimates. As such, the loss reserve information is minimally probative, and may create the erroneous perception that the defendant had conclusively determined the value of the Plaintiffs' claim. Moreover, the speculative nature of loss reserves makes it almost certain that allowing such evidence would result in confusion amongst the jury and lead to a wasteful and unnecessary debate regarding the nature and accuracy of loss reserves.

Simply put, the low probative value of this evidence is substantially outweighed by the risk of confusion and delay.

For this reason, information regarding the Defendant's loss reserves will not be allowed into evidence.[1]

**B. The Allegedly Missing Appraisal**

The Defendant next contends that evidence concerning an alleged 1988 or 1989 appraisal of the barn house should not be admitted into evidence at trial. The Court agrees.

There are two main structures on the Property, a barn house and a farm house. The barn house, which burned down, is the subject of the present litigation. The Plaintiffs claim that the Defendant appraised the barn house in or around 1988 or 1989 (the "alleged appraisal"). The Plaintiffs, however, do not possess a copy of that alleged appraisal. The Defendant represents that, despite a diligent search of its records, it was only able to find an appraisal of the farm house, <u>but not</u> the barn house.

The Plaintiffs now seek to offer evidence of the Defendant's failure to produce the alleged appraisal. The Plaintiffs claim that such evidence is probative with regard to

---

[1] The Plaintiffs also seek to introduce into evidence the fact that the Defendant initially redacted the loss reserve information from its discovery documents. There is no evidence that the Defendant did this in a manner that was designed to deceive or unfairly prejudice the Plaintiffs. The fact that the Court has now deemed the loss reserve information inadmissible only reinforces the Defendant's position that its actions were part of a good faith discovery dispute. The Court will not allow the Defendant's conduct during discovery to be offered into evidence.

6

its bad faith claim. They say the evidence will permit the jury to infer that, because the alleged appraisal would have been unfavorable to its position on the Plaintiffs' claims, the Defendant has either destroyed or otherwise withheld the appraisal.

As an initial matter, the parties disagree as to the proper rubric by which the Court should analyze the admissibility of this evidence. The Plaintiffs argue that this issue is governed by Federal Rule of Evidence 1008. Rule 1008 works in conjunction with Rule 1004 to establish the admissibility standards for the contents of a lost writing. Rule 1004 provides, in relevant part, that "other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed. . . . " Rule 1008 provides that "when the admissibility of other evidence of contents of [a writing] . . . under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of Rule 104. However, when an issue is raised . . . whether the asserted writing ever existed the issue is for the trier of fact to determine as in the case of other issues of fact." Thus, if the Plaintiffs were seeking to offer the alleged appraisal in order to prove its contents, then Rules 1008 and 1005 would govern.

The Plaintiffs, however, are not seeking to offer the alleged appraisal to prove its contents. Instead, the Plaintiffs seek to prove that the Defendant either destroyed the appraisal or is withholding it.

It appears that the true intention of the Plaintiffs is to discredit the Defendant by using evidence of spoliation to create an adverse inference. "Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir.2007) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999)). Thus, the question properly before the court is the appropriateness of sanctioning the Defendant and not admissibility of evidence. Accordingly, Rules 1008 and 1004 are inapplicable and the Court will rely on the well established standards for determining sanctions for spoliation of evidence.

The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, see West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999), and is assessed on a case-by-case basis. See United States v. Grammatikos, 633 F.2d 1013, 1019-20 (2d Cir.1980). Among the permissible sanctions for spoliation is "an inference that the evidence would have been unfavorable to

the party responsible for its destruction." Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.Y., 601 F.Supp.2d 566, 569 (S.D.N.Y.2009) (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998)). The rationale for permitting an adverse inference is that such inference "should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." Krosinich, 150 F.3d 126.

It is axiomatic, of course, that to pursue a spoliation claim, a party must show that the evidence existed at one time. Epstein v. Toys-R-Us Del., Inc., 277 F.Supp.2d 1266, 1277 (S.D.Fla. 2003). Aside from the Plaintiffs' self-serving statements, there is scant evidence that the appraisal of the barn house ever even existed. Indeed, the Plaintiffs point to no other witnesses who had direct, personal knowledge of the alleged appraisal of the barn house. The plaintiffs' claim that the barn house was appraised appears to be supported mainly by conjecture, namely, their theory that the defendant would not have insured the property without doing a separate appraisal of the barn house. In sum, the Plaintiff has failed to establish the *existence* of the supposedly destroyed evidence. As such, it is not entitled to admit evidence of spoliation.

Even assuming <u>arguendo</u> that the Court was convinced the alleged appraisal ever existed, the Plaintiffs have failed to meet the other requirements for an adverse inference under the spoliation doctrine. In addition to proving that the evidence existed, a party seeking an adverse inference based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. <u>Byrnie v. Town of Cromwell</u>, 243 F.3d 93, 107-12 (2d Cir. 2001).

With regard to the third element, the evidence's relevance, there is little doubt that such an appraisal, if it existed, would be relevant to issues in this case. With regard to the culpability element, however, the only evidence the Plaintiffs offer of the defendant's culpability is their assertion that the alleged appraisal would have been detrimental to the Defendant's position in this litigation, thereby giving the Defendant motive. The Plaintiffs' reliance on motive is unpersuasive, as it relies on the presumption that the alleged appraisal was negative for the defendant, which has not been proven. Moreover, even assuming the Plaintiffs could establish

culpability, they have not posited even a guess as to the approximate date when the alleged appraisal was supposedly destroyed, and have thereby failed to establish that the Defendant had a duty to preserve the alleged appraisal whenever it was supposedly destroyed.

In sum, having failed to meet the most basic requirements for a spoliation of evidence claim, the Plaintiffs are not entitled to offer evidence of spoliation to create an adverse inference. All evidence with regard to the alleged appraisal is inadmissible.

### C. Testimony of Former Defense Attorney Theodore Tucci and Former Plaintiffs' Attorney Michael O'Connell

The Plaintiffs intend to call their former attorney, Michael O'Connell ("O'Connell") and a former attorney for the defense, Theodore Tucci ("Tucci"), as witnesses at trial. The Plaintiffs, however, did not disclose either of these individuals as witnesses prior to the close of discovery, as required by Federal Rule of Civil Procedure 26(a) (a party must provide to the other party in litigation the names of those individuals that the disclosing party may use to support its claims or defenses). For this reason, the Defendant argues the Court should preclude the testimony of either of these individuals. The Court agrees.

11

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Plaintiffs claim that the testimony of these attorneys is relevant to the issue of whether they complied with the material terms of the policy. The Plaintiffs argue that their failure to notify the Defendant of their intention to call these witnesses is justified because they did not expect the Defendants to seek a jury instruction on material noncompliance. The Court finds the plaintiffs' representations incredible in this regard. The Defendant has never made a secret of its intention to raise the issue of material noncompliance, and in fact specifically listed "[refusal] to perform as required under the policy" as an affirmative defense in its answer which was filed on December 18, 2006. Plaintiffs offer no reasonable excuse for not anticipating that noncompliance would be an issue at trial.

Even assuming arguendo that the Plaintiffs could offer a legitimate rationale for not anticipating this issue and were thereby able to overcome Rule 37, the boundaries of the attorney-client privilege would make Tucci's testimony extremely problematic, and expose him to an ethical minefield. Moreover,

12

calling either witness is completely unnecessary because the plaintiff herself, Lucretia Mali, is listed as a witness and available to testify. Surely, Mali is the best source from whom to elicit information regarding her compliance or noncompliance with the terms of the Policy.

In sum, the Plaintiffs have utterly failed to offer any justification for not notifying the Defendant of their intention to call O'Connell or Tucci. As such, Rule 37 precludes the Plaintiffs from calling O'Connell or Tucci as witnesses at trial. Moreover, even if the Plaintiffs could overcome Rule 37, the testimony of either witness would be inadmissible as cumulative and completely unnecessary.

### III. **CONCLUSION**

The defendant's renewed motions in limine and motions to preclude [Doc.#145, #146, #147 & #148] are GRANTED. Evidence with regard to loss reserves or the alleged appraisal will not be admitted into evidence. The plaintiffs are precluded from calling either Michael O'Connell or Theodore Tucci to testify.

SO ORDERED this 17th day of June, 2011 at New Haven, Connecticut.

/s/ Ellen Bree Burns, SUSDJ

ELLEN BREE BURNS, SENIOR JUDGE
UNITED STATES DISTRICT COURT