United States District Court
District of Connecticut

```
THE ESTATE OF FREDERICK MALI and    :
LUCRETIA MALI,                      :
           Plaintiffs,              :
                                    :
                                    :
V.                                  :     No. 3:06-CV-01475 (EBB)
                                    :
                                    :
FEDERAL INSURANCE COMPANY           :
           Defendant.               :
```

**RULING ON DEFENDANT'S MOTION FOR SANCTIONS**

The present litigation stems from an insurance dispute between the Plaintiffs-insured, Lucretia Mali and the estate of her late husband, and the Defendant-insurer, Federal Insurance Company. The Defendant has filed a motion, pursuant to Rule 11 of the Federal Rules of Procedure, for sanctions. The issue of sanctions is currently scheduled for a hearing on July 12, 2011, the same day as jury selection. Upon further review of the parties' pleadings, however, it is the determination of the Court that a hearing is unnecessary because the Defendant has failed to comply with the procedural requirements of Rule 11. For the foregoing reasons, the Defendant's motion is DENIED.

1

## A. Background

For the purposes of this ruling, familiarity with the facts and procedural background of the case is assumed. At one time the Plaintiffs' property was serviced by a company named Patterson Oil. During discovery, the Plaintiffs subpoenaed and deposed a corporate designee of Patterson Oil. Discovery concluded on March 1, 2009, and this matter proceeded toward trial. On January 10, 2011, Plaintiffs issued a subpoena directed at Patterson Oil calling for an oral deposition of Patterson Oil's corporate designee and the production of certain documents. The Defendant objected and moved to quash the subpoena.

In support of the subpoena, Jamie Brickell, who is counsel for the Plaintiffs, filed an affidavit representing that Lucretia Mali had phoned him on December 15, 2010. According to Brickell, Mali informed him that she had received notice from Patterson Oil that it was "terminating all service" to the property. Brickell stated that Mali told him "a senior executive at Patterson [Oil]" had told her "that her account was being terminated because of recent statements made to Patterson by a representative of Federal Insurance Company." Brickell claimed that the only way to obtain more facts about the

2

incident would be to take a brief deposition of a representative of Patterson Oil.

The Court denied the Defendant's motion to quash, and granted the Plaintiffs leave to take the deposition for the limited purpose of questioning Patterson regarding the termination of service at the Plaintiffs' property.

On February 16, 2011, Barry Patterson, the president of Patterson Oil, was deposed at the law offices of defense counsel in West Hartford. The deposition was contentious, with the defense counsel frequently interrupting plaintiffs' counsel by demanding that he not deviate from the limited purpose for which the plaintiffs were granted leave to take the deposition. Patterson testified that he has not had a service contract with Mali for over five years, and that it was in fact the Malis who terminated Patterson Oil's service, not the other way around. He further testified that Lucretia Mali contacted him recently seeking to resume service to the property. He claimed, however, that he refused to take her on as a customer because he was displeased that he is involved in the parties' lawsuit and he felt she was trying to "trap" him. Patterson further represented that the Defendant had not contacted him with regard to oil service to the property.

On March 9, 2011, the Defendant filed a motion to impose sanctions against Mali and her attorneys in connection with the subpoena and the affidavit filed in support of it. Specifically, the Defendant requested that Mali and her attorneys be required to reimburse Federal for the attorneys' fees and costs incurred in connection with the subpoena and the second deposition of Patterson. The Defendant did not separately serve either Mali or plaintiffs' counsel with a copy of the motion 21 days prior to filing with the court, as Rule 11 requires.

### B. *Discussion*

Rule 11 (b) (3) provides the following, in relevant part:

> **By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.**

The rule goes on to provide courts with a variety of possible sanctions to impose for violations, such as striking the offending paper, issuing an admonition, reprimand, or censure; requiring participation in seminars or other

educational programs, ordering a financial penalty; or referring the matter to disciplinary authorities.

Here, the Defendant contends that the declaration of attorney Brickell, discussed supra, was "based on false statements of fact" intended to mislead the Court and the Defendant. As such, the Defendant seeks remuneration for costs associated with taking the deposition.

The Court, however, has no occasion to review the merits of the Defendant's claim because the Defendant has not complied with the "safe harbor" provision of Rule 11. The safe harbor provision provides that a motion for sanctions is not to be filed until at least 21 days after being served upon the opposing party. As the committee notes explain, "if, during this period, the alleged violation is corrected . . . the motion should not be filed with the court. These provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not have evidence to support a specific allegation." The safe harbor provision was added to Rule 11 in 1993 because, under former iterations of the rule, "parties were sometimes reluctant to abandon a questionable

contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against sanctions."

The inclusion of the safe harbor provision evinces a clear preference for non-judicial resolutions of this type of issue. Moreover, service upon the opposing party 21 days prior to filing a Rule 11 motion with the Court is the bare minimum that is required of a party seeking sanctions; the committee notes advise that "counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." The safe harbor provision serves the interests of judicial economy, as well as collegiality and civil decorum. In keeping with these considerations, the Second Circuit Court of Appeals has held that a district court is <u>required</u> to deny a motion for sanctions for failure to comply with the 21-day safe harbor in order to afford that party an opportunity to correct allegedly sanctionable behavior. <u>Hadges v. Yonkers Racing Corp</u>., 48 F.3d 1320, 1328 (2d Cir. 1995).

The Defendant argues that its noncompliance with the safe harbor provisions is of no consequence because "this is not the type of case where the 'problem may be corrected' between the service and filing of a motion for sanctions." Yet,

6

contradictory to this statement, the Defendant goes on to state that "unless Plaintiffs were willing to voluntarily reimburse Federal for the costs and fees associated with the frivolous subpoena and deposition (which they clearly were not), there is simply no way they could have corrected the 'problem' created by their misrepresentations to the Court."  Thus, by the Defendant's own logic, the problem could have been solved.  Yet instead of giving the Plaintiffs the opportunity to correct the alleged problem, the Defendant's operated on the presumption that the Plaintiffs would be unwilling to reach an accommodation.  The Defendant now asks the Court to take the Plaintiffs' opposition to a motion for sanctions as proof that this presumption was correct.

    The Court cannot accept the Plaintiffs' opposition to a motion for sanctions that has now been filed with the Court as evidence of unwillingness to correct the alleged problem had the motion never been filed.  Unfortunately, it is unknowable whether the Plaintiffs, confronted with the Defendant's claims, informally or at least prior to the filing of a Rule 11 motion with the Court, might have offered the Defendant remuneration for the costs of the deposition or other consideration.  The Defendant denied the Plaintiffs that opportunity when it took

7

the drastic and procedurally improper step of filing its motion for sanctions immediately with the Court.[1]

The Court is aware that at various times the parties have had a rancorous relationship with one another.  As this matter proceeds to trial in the upcoming week, the Court would advise the attorneys for both parties that, going forward, perceived past slights, grudges or grievances will not be accepted as an excuse for a lack of civility, decorum or professionalism.  In the future, if either party feels that its opponent has engaged in conduct that calls for sanctions or warrants some type of financial remuneration or apology, such party would be well advised to act in conformity with the procedural prerequisites of Rule 11 <u>prior</u> to involving the Court in such a dispute.

---

[1] Similarly, it should be noted that the Plaintiffs' lack of an opportunity to withdraw the offending paper, in this case Brickell's affidavit, is also fatal to the Defendant's motion. This is because "[t]he 21-day, safe-harbor service requirement controls not only the earliest date on which a motion may be filed ..., it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed." <u>In re Pennie & Edmonds LLP</u>, 323 F.3d 86, 87 fn.2 (2d Cir. 2003).  Thus, a party <u>must</u> serve its Rule 11 motion <u>before the court has ruled on the pleading</u>; the motion is untimely if filed too late to permit correction or withdrawal. <u>Id</u>.  Otherwise, the purpose of the safe harbor provision would be "nullified." <u>Id</u>.

In the present case, the Court ruled on the "pleading" when it granted the Plaintiffs leave to take the deposition of Patterson Oil.  Thus, because the motion was filed after the Court granted leave to take the deposition and after the deposition itself had been taken, the Plaintiffs had no opportunity to withdraw the offending paper and the Defendant's Rule 11 motion is untimely.

SO ORDERED this 7th day of July, 2011 at New Haven, Connecticut.

_____/S/_____
ELLEN BREE BURNS, SENIOR JUDGE
UNITED STATES DISTRICT COURT