UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


------------------------------ x
THE ESTATE OF FREDERICK MALI   :
and LUCRETIA MALI,             :
                  Plaintiffs,  :
                               :   3:06-CV-01475 (EBB)
            vs.                :
                               :   July 13, 2011
FEDERAL INSURANCE COMPANY,     :
                  Defendant.   :
                               :
------------------------------ x


                              Federal Building
                              141 Church Street
                              New Haven, Connecticut


                   PRETRIAL CONFERENCE

         (Transcription from Electronic Recording)


Held Before:

     The Hon. ELLEN BREE BURNS, USDJ Senior Judge




                 Transcription Services of
                 FALZARANO COURT REPORTERS
                  117 North Saddle Ridge
                 West Simsbury, CT  06092
                      860.651.0258

A P P E A R A N C E S:

    <u>For the Plaintiff:</u>

        PRYOR CASHMAN LLP
        7 Times Square
        New York, NY  10036
        212.421.4100
            BY:  JAMES M. BRICKELL, ESQ.


    <u>For the Defendant:</u>

        SEIGER GFELLER LAURIE LLP
        Blue Back Square
        65 Memorial Drive
        West Hartford, CT  06107-2434
        860.760.8400
            BY:  MARK B. SEIGER, ESQ.
                 ROBERT D. LAURIE, ESQ.

```
 1                    10:00 O'CLOCK A.M.

 2                (Tape 1, side A.)

 3                MR. LAURIE:  Good morning, your Honor.

 4                THE OCURT:  Gentlemen, I think we

 5    should address the Defendant's objections first

 6    because we had an opportunity yesterday afternoon, my

 7    Clerk and I, to review those objections and I think I

 8    know where I'm going on them, and then we'll take the

 9    Plaintiff's, okay?

10                MR. LAURIE:  Yes, your Honor.

11                (Pause.)

12                THE COURT:  My clerk tells me that

13    you're not going to be able to get a transcript of

14    this hearing for a couple weeks.  So take extensive

15    notes.

16                MR. LAURIE:  Point of clarification.

17                THE COURT:  Yes, sir.

18                MR. LAURIE:  When you said Defendant's

19    objections, were you referring to our memorandum?

20                THE COURT:  Yes.  Yeah.

21                MR. LAURIE:  Okay.  Well, these are --

22    this is essentially our response.

23                THE COURT:  Plaintiff's request to

24    strike portions of Robert --

25                MR. LAURIE:  Padovani.
```

1                    THE COURT:  -- Padovani's testimony.

2     Yes.

3                    MR. LAURIE:  Yes, this is our response

4     to their objection.

5                    THE COURT:  Yeah.  Oh, okay.

6                    MR. LAURIE:  So I would -- do you want

7     an up to date (unintelligible)?

8                    THE COURT:  Certainly.  They should

9     present it first, yeah, of course.

10                    THE CLERK:  State your name for the

11    record, this is the first time (unintelligible).

12                    MR. LAURIE:  Sorry, sure.  Robert

13    Laurie on behalf of Federal Insurance.

14                    THE COURT:  If you're having a problem

15    keeping up with this, would you let us know?

16                    We don't have a regular Court Reporter

17    unfortunately, so we have to -- and this young lady is

18    going to try to help us out.

19                    MR. LAURIE:  Thank you.

20                    (Pause.)

21                    MR. BRICKELL:  Good morning, your

22    Honor.

23                    THE COURT:  Good morning, sir.

24                    MR. BRICKELL:  Jamie Brickell from

25    Pryor Cashman on behalf of the Plaintiffs.

1               THE COURT:  Yes, sir.

2               MR. BRICKELL:  I'd like to address the

3  issues concerning the Robert Padovani deposition.

4               THE COURT:  Yes.

5               MR. BRICKELL:  One question I had

6  before I started, your Honor.  Do you have a copy of

7  the entire transcript?

8               THE COURT:  Yes, I do.

9               MR. BRICKELL:  Would it be okay if we

10  went from the beginning to point out the sections that

11  we agree should come out?

12               THE COURT:  Sure.  That's fine.

13               MR. BRICKELL:  Is that okay?

14               THE COURT:  If you have agreement of

15  it.

16               MR. LAURIE:  Yes.

17               MR. BRICKELL:  I'll try to be as direct

18  as I can so that it's easy to follow.

19               THE COURT:  Okay.

20               MR. BRICKELL:  On page 13 of the

21  transcript.

22               THE COURT:  13.  Yes, sir.

23               MR. BRICKELL:  Your Honor, one of the

24  issues that we will ask you to address at some point

25  is an objection that Defendants made to what we have

1   referred to as the Claims Vision file, Exhibit 48.  In

2   the course of this deposition Mr. Padovani was shown

3   sections of the Claims Vision file.  This first entry

4   on lines 15 to 18 is the colloquy between myself and

5   Mr. Laurie concerning their objection to the document.

6                    Assuming that your Honor will rule on

7   that at some point, I would ask that lines 15 through

8   18 be removed.

9                    THE COURT:  15 through 18.  You mean

10  just colloquy between the two of you --

11                   MR. BRICKELL:  Yes.

12                   THE COURT:  Yeah.  Okay.

13                   (Pause.)

14                   THE COURT:  We went over this

15  yesterday.  Those portions of the transcript that

16  related to the objection and statements of counsel,

17  we're taking that out in any event.

18                   MR. BRICKELL:  Yes, your Honor, but

19  when we finish today what we'd like to be able to do

20  is give instructions to the video people so that they

21  can delete specific lines on specific pages.

22                   THE COURT:  Right.  I understand.

23                   (Pause.)

24                   THE COURT:  What I'm trying to say I

25  guess is yesterday we went over the objections.  Where

1   there is colloquy between counsel about objections,

2   that should be deleted from the videotape.

3                    MR. BRICKELL:  Yes.

4                    THE COURT:  We resolved the issue, but

5   that should be deleted.

6                    MR. BRICKELL:  Yes.  That's what I'm --

7   I'm trying to be as thorough as I can.

8                    THE COURT:  Yes.  Right.  Exactly.

9                    MR. LAURIE:  My only question is there

10  has been no resolution to that exhibit, whether it is

11  --

12                   THE COURT:  Exhibit 48?

13                   MR. LAURIE:  Yeah.  I mean we contend

14  that they haven't laid a proper foundation and

15  examined this full exhibit.  We stated our objection.

16  There's no resolution, there's no agreement that it's

17  (unintelligible).

18                   THE COURT:  I see.

19                   MR. BRICKELL:  Your Honor, Jamie

20  Brickell again.  The point that we raised in the court

21  of the deposition and the argument that we'll make to

22  your Honor is that this is a document that is

23  maintained by Federal in the ordinary course of their

24  business.  The witness testified during the course of

25  his deposition that he maintained notes when he was

1    handling a file in two ways.  One was taking

2    handwritten notes, and the other was accessing this

3    Claims Vision file where he would make notes directly

4    to specific people at Federal.

5                      So in the instances that we examined

6    him, we showed him notes that he wrote on the Claims

7    Vision file or that were written to him, or that he

8    referred to in notes that he wrote.

9                      So we can have this addressed either

10   one of two ways.  Either the entire document should be

11   in as a business record, or we would simply ask for

12   permission to use the pages that were shown to the

13   witness for purposes of having the examination make

14   sense.

15                    THE COURT:  Um-hum.

16                    MR. LAURIE:  This is a fairly

17   voluminous document.  It includes interviews.  It's

18   essentially emails between various parties relating to

19   this particular claim.

20                    Mr. Padovani does not control this.  He

21   testified that he did not know who made changes to it,

22   who else had access to it.  He noticed -- he testified

23   that other people had access to it.  He cannot verify

24   the truthfulness of the statements contained in there.

25                    In addition, a lot of the entries have

1    hearsay within hearsay, so even if it's established

2    that it is a business record, there is hearsay within

3    the statements that are made in the document.

4              Mr. Padovani reports about

5    conversations he had with third parties whose -- it

6    wasn't their obligation to report accurately.  So

7    there's no, there's no ability to trust the

8    truthfulness of the statements that are being made.

9              THE COURT:  Yet we haven't seen this

10   exhibit so I --

11             MR. LAURIE:  I know.  That's why I'm

12   surprised that we're (unintelligible).

13             THE COURT:  No.  This is new, new

14   material for us, so we haven't -- but I'll have to see

15   these at some point to know whether or not I'm going

16   to sustain objection to that.

17             MR. LAURIE:  Okay.  I understand, your

18   Honor.

19             THE COURT:  That is not on the agenda

20   this morning though I gather.

21             MR. LAURIE:  Not that -- it wasn't by

22   me.

23             THE COURT:  Yeah, okay.

24             MR. BRICKELL:  The reason I bring it

25   up, your Honor, again respectfully, is because there

```
1    are references to entries in this file in the course

2    of the deposition and there are objections made that

3    the document is not yet in evidence.  So I'm bringing

4    that to the Court's attention.

5                    The next entry that I would ask the

6    Court to look at is on page 35.

7                    THE COURT:  Yes.

8                    MR. BRICKELL:  There's a question asked

9    on line 1, Mr. Laurie objected, I asked the witness if

10   he needed me to rephrase it and he said he did.  I

11   would propose that lines 1 through 8 come out.

12                   THE COURT:  Any objection?

13                   MR. LAURIE:  Um --

14                   THE COURT:  If it was rephrased?

15                   MR. LAURIE:  Yeah, I'm a little

16   concerned because this is trial testimony.

17                   THE COURT:  Um-hum.

18                   MR. LAURIE:  And the witness needed the

19   question rephrased, and then the question was

20   rephrased.  I don't see the utility of it.  It's not

21   (unintelligible) here, I just stated an objection.  I

22   don't see the utility of taking this out of context

23   and reforming the question.

24                   THE COURT:  We don't want any record

25   that's being presented to the jury, any colloquy
```

```
 1    between counsel, right?  So there was an objection,
 2    counsel said do you want me to rephrase that, you said
 3    I do, and he did.  So why don't we start with the
 4    rephrasing of it?  I don't understand.  I don't want
 5    the jury have to sit through objections.
 6                    MR. LAURIE:  Yup.  No, that's fine.
 7                    THE COURT:  Is that all right?
 8                    MR. LAURIE:  Yup.
 9                    THE COURT:  Okay.  So that would take
10    out lines 1 through --
11                    MR. BRICKELL:  8.
12                    THE COURT:  8.  Because when it was
13    rephrased you didn't object to that.
14                    MR. LAURIE:  Well, I didn't object, so
15    I understand.
16                    THE COURT:  Yup.  Okay.
17                    MR. LAURIE:  Thank you, your Honor.
18                    MR. BRICKELL:  Your Honor, on page 36 I
19    asked a question at line 3.  There was an objection
20    and no answer.  I would propose that lines 3 through 6
21    be removed and we continue on line 7.
22                    THE COURT:  Okay.  Granted.
23                    MR. LAURIE:  There's an objection about
24    the --
25                    THE COURT:  3 through 6.  3 through 6.
```

1   Right?

2               MR. LAURIE:  Yes.

3               THE COURT:  Line 3 through 6 will be

4   removed.

5               MR. BRICKELL:  On page 40, your Honor.

6               (Pause.)

7               THE COURT:  Yes.

8               MR. BRICKELL:  I asked a question on

9   line 18 and there's an objection stated on line 20.

10  There's no basis for the objection stated.  I would

11  propose that lines 20 and 21 be removed.

12              THE COURT:  Well, it doesn't make any

13  sense leaving 22 because 22 is the answer to 21, so --

14              MR. BRICKELL:  22 is an answer to 18

15  and 19.

16              THE COURT:  Yes, but if it said, if you

17  put (unintelligible) on it, if you recall was the

18  question, and he says I don't, I don't recall.  I

19  gather that's what the witness meant.

20              MR. BRICKELL:  Then I would simply ask

21  that line 20 be removed.

22              THE COURT:  Yeah, I -- well --

23              MR. LAURIE:  Just to (unintelligible)

24  we can be complete, the colloquy starts on 14 in which

25  Mr. Brickell read him a document that's not in

1    evidence, and he asked, after reading from a document

2    that's not in evidence, he asked Mr. Padovani does

3    that refresh your recollection.

4             THE COURT:  And he said it didn't.

5             MR. LAURIE:  That's improper, I

6    objected, he said he didn't, so (unintelligible) he

7    read from a document that's not in evidence as well

8    (unintelligible).

9             THE COURT:  So strike from 14 through

10   22.

11            MR. BRICKELL:  Your Honor, that's the

12   precise document that I started the colloquy this

13   morning about this was an entry that Mr. Padovani made

14   in the company files where he wrote down at the time

15   what was happening in his handling of the file, and I

16   asked him if his own notes refreshed his recollection.

17   There's no basis for an objection to that.

18            MR. LAURIE:  Your Honor, I submit that

19   it's -- the basis for the objection is that this

20   document is not in evidence.  He read from the

21   document as opposed to giving the document to the

22   witness, directing him to the particular entry, and

23   asking him does that refresh your recollection.  He

24   read from the document.

25            THE COURT:  This is Exhibit 48 you're

 1  talking about.  And we still don't know whether we're

 2  going to admit that or not.

 3              MR. LAURIE:  Correct.  So what we would

 4  have here is it's just -- we did not strike the

 5  portion, we would just have him reading from the

 6  document, him being Mr. -- Attorney Brickell.

 7              THE COURT:  So your request to striking

 8  what, beginning where?

 9              MR. LAURIE:  If you start on line 14,

10  your Honor.

11              THE COURT:  Right.

12              MR. LAURIE:  He reads from Exhibit 48,

13  he being Attorney Brickell.

14              THE COURT:  Yes, yes.

15              MR. LAURIE:  And he asks do you see

16  that.

17              THE COURT:  Yes, I see that.  Yes.

18              MR. LAURIE:  Then he goes on to ask if

19  it refreshes his recollection.

20              THE COURT:  Um-hum.

21              MR. LAURIE:  He says it doesn't.

22              THE COURT:  Um-hum.

23              MR. LAURIE:  So if we're striking the

24  portion that asks does it refresh your recollection,

25  and you have this right before you which he reads from

1    the document, or else -- then Attorney Brickell

2    reading from the document that's not in evidence.

3                     MR. BRICKELL:  Your Honor, I'm not

4    proposing that we strike 18 and 19.  I want those

5    questions and his answer in.  I've shown him something

6    he wrote in 2005 and asked him if that refreshes his

7    recollection.  There's nothing objectionable about the

8    question.

9                     MR. LAURIE:  Your Honor, the

10   objectionable part is that Attorney Brickell read from

11   the document and then stated does that refresh your

12   recollection.  He didn't ask --

13                     (Pause.)

14                     THE COURT:  Yes.  This particular one

15   depends on what I really will be on the admissibility

16   of Exhibit 48.  So at the moment I don't feel it

17   appropriate to comment on whether or not I'm going to

18   delete this.

19                     MR. LAURIE:  Okay.

20                     THE COURT:  But we'll let you know.

21                     (Pause.)

22                     MR. BRICKELL:  Your Honor, we have the

23   same issue --

24                     THE COURT:  Right, on the next page?

25                     MR. BRICKELL:  -- on the following

```
 1   page, on 41, from lines 5 to 13.  I showed Mr.

 2   Padovani his own entry in the Claims Vision file and I

 3   asked him if it refreshed his recollection, and he

 4   said it didn't.  Mr. Laurie objected and we have from

 5   5 to 13.  I would propose that the objection be

 6   stricken.

 7                THE COURT:  Until I know whether the

 8   document is coming in, it's very difficult to rule on

 9   this.  We ought to have an argument on the

10   admissibility of the document.  If it's admissible,

11   then I rule one way; if it's inadmissible -- and we're

12   striking a lot.  So we'll have to address that issue

13   before we can determine what should be stricken here.

14   But we better do that today, gentlemen, because we're

15   going to prepare the videotape.

16                MR. LAURIE:  See, it's an interesting

17   point, your Honor.  There are many people who had

18   hands in this particular document, and a number of

19   them are going to be witnesses here.  So we do not

20   believe that Attorney Brickell has qualified this

21   document as a business record, and even if he did, it

22   has hearsay within hearsay.  But there are other

23   witnesses and you may be able to prove that during the

24   course of trial.  It's a bit --

25                THE COURT:  This is a business record,
```

```
 1    right?

 2                    MR. LAURIE:  Well, that's what he

 3    contends.

 4                    THE COURT:  I mean is it or isn't it?

 5    What's your position?  First of all, we have to decide

 6    if it's admissible.  If it's not admissible then all

 7    of this comes out.

 8                    MR. LAURIE:  Right.

 9                    THE COURT:  If it is admissible, then I

10    will have to address the issues that you're raising.

11    So you have to --

12                    (Pause.)

13                    THE COURT:  So I've got to see the

14    document.  I haven't seen it even, so we'll have to

15    have an argument on the admissibility of that document

16    before we can proceed to rule on these objections.

17                    MR. BRICKELL:  Okay.  (Unintelligible.)

18                    THE COURT:  Your Honor, if I could try

19    to assist, if your Honor will look at page 12 of the

20    transcript.  Actually, it begins on page 10.

21                    THE COURT:  Okay.

22                    MR. BRICKELL:  At the top of page 10

23    the witness in response to my question said, "I had

24    field notes and I had electronic notes."

25                    THE COURT:  Um-hum.
```

1          MR. BRICKELL:  I asked him at line 3,

2     "What are field notes," and he explains, and I asked

3     if he turned over all of the field notes he had.  He

4     said yes.  I said, "And have you" -- at line 10, "And

5     had you turned over all the electronic notes that you

6     have?"  And he said, "Answer:  I had none.

7               "Question:  How are the electronic

8     notes maintained?

9               "Answer:  In the computer system.

10               "Question:  Have you ever heard of the

11     expression Claims Vision?

12               "Answer:  Yes.

13               "Question:  Can you tell us what Claims

14     Vision is?

15               "Answer:  It's a system that Chubb uses

16     for file updates and notes back and forth.

17               "Question:  When you say Chubb, you're

18     referring to Federal, correct?

19               "Answer:  Yes."

20               Line 25.  "Tell us who would have

21     access within Federal to the Claims Vision file on a

22     particular case.

23               "Answer:  The adjuster, some

24     secretarial (phonetic) reports and your supervisors.

25               "Question:  Is the Claims Vision file

1    something that's maintained at Federal in the ordinary

2    course of its business?

3                     "Answer:  I have no idea.

4                     "Question:  When you handle a file, do

5    you typically maintain electronic entries on a Claims

6    Vision file?

7                     "Answer:  Yes.

8                     "Question:  Do you recall whether the

9    Claims Vision file was used in connection with the

10   Mali loss?

11                    "Answer:  I do.

12                    "Question:  Did you make entries in he

13   Claims Vision file for the Mali case?

14                    "Answer:  I did.

15                    "Question:  How were you notified if

16   new entries were made on a Claims Vision file?

17                    "Answer:  If it's directed to you a

18   note would pop up on the system.

19                    "Question:  In 2005, do you recall how

20   you made entries in the Claims Vision file?

21                    "Answer:  Are you referring to --

22                    "Question:  Physically how did you do

23   it?

24                    "Answer:  It would be a hard location

25   at either home where I had an office or the office."

1          And then skip down to line 9.  "So if

2    you wanted to make an entry into the Claims Vision

3    file, you would log onto your computer and type in an

4    entry, then send it, correct?

5                "Answer:  I would log on through

6    Chubb's availability to me to do that.  I would have

7    to enter that.

8                "Question:  And once you accessed the

9    Claims Vision file, you could access the Mali file,

10   correct?

11               "Answer:  All of my files that pertain

12   to me, yes.

13               "Question:  With regard to the Mali

14   file, if you wanted to make an entry, you would access

15   the Claims Vision system, type in what you wanted to

16   type in, and if you wanted to read what somebody else

17   had written you could do the same and log in and read

18   it, correct?

19               "Answer:  I'm not aware of if somebody

20   else makes unless it's directed to me.  I don't know

21   if there's a note that exists."

22               So what I'm saying, your Honor, is that

23   this man testified that he maintained his notes in two

24   ways.  He took field notes, or he could log onto the

25   computer system established at Chubb.  They produced

1  the Claims Vision file as a document in discovery.  It

2  had all of the entries that everyone at Chubb made in

3  connection with this file.  It's a business record.

4  If there are specific entries that have hearsay in

5  them we can address that.  But it's a business record

6  that should be admitted as such.

7                    MR. LAURIE:  May I just approach --

8                    THE COURT:  Sure.

9                    MR. LAURIE:  -- (unintelligible).

10                    I appreciate the colloquy that Attorney

11  Brickell had with Mr. Padovani.  I appreciate that Mr.

12  Padovani made notes into the system.  The form of the

13  exhibit is it's a voluminous exhibit in which many

14  people made entries into the system, and many of the

15  entries contained statements from third parties.  It's

16  like a police report.  You know, the report itself may

17  be a business record but the statements reflected in

18  the report from third parties are hearsay.

19                    So this a -- it's a very cumbersome

20  document and which Attorney Brickell has offered to

21  the Court as a piece of evidence.  Well, it's not.

22  It's not admissible because it hasn't been established

23  as a business record in the first place, and even if

24  it was a business record, there's hearsay within the

25  business record that must be addressed.

1                    Our concern is that at the end of the

2     day we have this big document with hearsay within

3     hearsay, and Attorney Brickell gets to read from the

4     document to the jury and there's no -- there's no way

5     to test the truthfulness of some of the statements in

6     the document.

7                    And just for clarity of the record I'll

8     read to you, your Honor, if you will, the colloquy I

9     had with Mr. Padovani with respect to this document.

10    And that is, it begins on page 118, your Honor.  It's

11    down at the bottom, line 23.  And I don't need to read

12    it into the record, I'll just state the page -- I mean

13    the line numbers.  It goes from line 23 through page

14    120.

15                   THE COURT:  I'm having trouble finding

16    the page because these don't seem to be numbered.

17                   MR. LAURIE:  On the -- they're on the

18    upper right-hand corner.

19                   THE COURT:  We don't have number 18,

20    I'm sorry to say.

21                   MR. LAURIE:  Okay.

22                   THE COURT:  This is all mixed up.  This

23    says 74, 75 --

24                   MR. LAURIE:  (Unintelligible.)

25                   THE COURT:  I think we may have another

1    copy here.

2                    (Pause.)

3                    THE COURT:  What was it, 117?

4                    MR. LAURIE:  117, yes.

5                    THE COURT:  Okay.  Yes, thank you.  It

6    wasn't in the copy I had.  Yes.  All right.  Proceed.

7                    MR. LAURIE:  So it begins, bear with me

8    here, okay, it's 118, line 23.

9                    THE COURT:  Um-hum.

10                   MR. LAURIE:  And then it goes through

11   page 119, 120, and it ends on line 17.  120, line 17

12   it ends.

13                   THE COURT:  120, like 17?  I'm sorry.

14   I thought you said 119.

15                   (Pause.)

16                   THE COURT:  Okay.  I've got the page

17   now.

18                   MR. LAURIE:  Oh, okay.  And I'm sorry

19   for being confusing here.

20                   THE COURT:  You're not confusing.

21                   MR. LAURIE:  My questions start on 118,

22   line 23.

23                   THE COURT:  Right.

24                   MR. LAURIE:  And then they run -- I

25   just didn't want to take the Court's time by reading

```
 1   through it.  If you prefer I can do that.
 2                THE COURT:  We will rule on this when I
 3   get a chance to see 48.  Is somebody going to provide
 4   us with a copy of that?
 5                MR. LAURIE:  Do you have a copy?
 6                MR. BRICKELL:  I do.
 7                MR. LAURIE:  I have the document in my
 8   car, but I don't have a copy of it.  We can get one
 9   down to you.
10                THE COURT:  Okay.  Okay, because I'm
11   operating in a vacuum here you understand, when I ask
12   -- yeah, you're going to get it to me today, right?
13   You're going to get it to me today?
14                MR. LAURIE:  If you don't mind me
15   efiling, I can efile it today.
16                THE COURT:  Okay.
17                MR. LAURIE:  We can do it that way?
18                THE COURT:  Yeah.  These, you know, we
19   got to rule on this quickly so that the deposition may
20   be edited.
21                MR. LAURIE:  Stephanie, would you run
22   out to the car and grab it?  And then --
23                THE COURT:  Okay.  Good.
24                MR. LAURIE:  Stephanie will run out to
25   the car, grab it, and we can make copies.
```

```
 1                    THE COURT:  Good.  Thank you.

 2                    (Pause.)

 3                    THE COURT:  Why don't we abandon our

 4    colloquy about this particular document until I've had

 5    a chance to see it and determine whether it's

 6    admissible.  Okay?

 7                    MR. BRICKELL:  Thank you, your Honor.

 8    If I may add one additional point, and that is when

 9    you read the cross examination done by Mr. Laurie --

10                    THE COURT:  Yes.

11                    MR. BRICKELL:  -- you'll see that he

12    questioned the witness from the same document.

13                    THE COURT:  Okay.

14                    MR. BRICKELL:  So while he objected to

15    me using the document, he questioned Mr. Padovani

16    using the same document.

17                    MR. LAURIE:  Absolutely, but I did it

18    properly, your Honor.  I asked Mr. Padovani do you

19    have an independent recollection of the text, and then

20    I showed him the document, take the document from him

21    and say does that refresh your memory.  If he said

22    yes, then it did.  If he said no, he -- I didn't read

23    from a document that was not in evidence.

24                    THE COURT:  Um-hum.  You just called it

25    to his attention to see if that would help refresh
```

```
 1   him.
 2                  MR. LAURIE:  Yes.  Ask and utilize it
 3   to help refresh his memory.  And he either did for
 4   this -- I have not (unintelligible) any part of that
 5   -- that's exclusively (unintelligible).
 6                  THE COURT:  Yup.
 7                  MR. BRICKELL:  And the record will show
 8   the questions and answers, your Honor.
 9                  THE COURT:  The answers that he gave
10   you were -- it didn't refresh his recollection.  Is
11   that what you're telling us?
12                  MR. LAURIE:  No, sometimes they did.
13                  THE COURT:  Sometimes it did?  Oh,
14   okay.
15                  MR. LAURIE:  Sometimes they did.  But
16   at no point did I read from a document --
17                  THE COURT:  Yes, I see.
18                  Okay.  Let's move on.
19                  MR. BRICKELL:  Okay.  Your Honor, on
20   page 44 --
21                  THE COURT:  44?
22                  (Pause.)
23                  MR. BRICKELL:  The parties are in
24   agreement that lines 3 through 17 should be deleted.
25                  THE COURT:  3 through 17.  Okay.  I'm
```

 1  glad you agree on something, gentlemen.

 2              MR. BRICKELL:  We might get two or

 3  three more in today.

 4              THE COURT:  Good.  All right.  I like

 5  to see attorneys getting along.

 6              MR. BRICKELL:  At page 48, line 19.

 7              THE COURT:  Right.

 8              MR. BRICKELL:  Actually beginning on

 9  line 17, I asked a question, there's a colloquy, and

10  then I re-asked the question on page 49, line 6.  I

11  would propose that 48, line 17, through 49, line 5 be

12  deleted.

13              THE COURT:  One second.  If there's no

14  further objection after -- is that right?

15              MR. LAURIE:  (Unintelligible.)

16              Yes, your Honor.

17              THE COURT:  Fine.  Very good.  Thank

18  you.

19              (Pause.)

20              MR. BRICKELL:  On page 50 there is a

21  colloquy, lines 6 through 12.

22              THE COURT:  We'll still talking about

23  Exhibit 48.

24              MR. BRICKELL:  Yes.

25              THE COURT:  Yes.  Okay.

1          MR. BRICKELL:  Yes.  I'm alerting your

2   Honor to that.

3          THE COURT:  Okay.  I think that should

4   come out.  You agree?

5          MR. LAURIE:  As long as their question

6   comes out (unintelligible), because there would not be

7   a response.  I recognize that he restated the question

8   --

9          THE COURT:  Ah, yes.

10          MR. LAURIE:  -- but the question must

11   remain in there.

12          THE COURT:  That's true, that's true.

13   So it would be from --

14          MR. LAURIE:  Line 2.

15          THE COURT:  -- line 2, and it goes down

16   to 12, 2 through 12.

17          MR. BRICKELL:  That's correct, your

18   Honor, 2 through 12 should be out.

19          THE COURT:  All right.  Okay.

20          MR. BRICKELL:  On page 51 there are two

21   colloquies having to do with the witness being shown

22   portions of the Claims Vision file, so I would assume

23   we would have to come back to that.

24          THE COURT:  Yes, we will.

25          THE CLERK:  What line?

1          THE COURT:  Line 7.  Is that --

2          MR. BRICKELL:  The colloquies are --

3  for the objections are on line 11, and then -- this is

4  page 51, correct?

5          THE COURT:  Page 51.  51.

6          MR. BRICKELL:  If you look at lines 13

7  through 20, I asked a question, Mr. Laurie objection,

8  and I said I'll rephrase the question.  So I would

9  propose that 13 through 19 come out.

10          MR. LAURIE:  I'd agree with that, your

11  Honor, so long as --

12          THE COURT:  How about 13 through 20?

13          MR. LAURIE:  (Unintelligible.)

14          MR. BRICKELL:  Yes.  My mistake.

15          THE COURT:  Um-hum.

16          MR. BRICKELL:  Page 55.  My question on

17  line 5 is, "Do you recall getting this message from

18  Mr. Mandolfo?"  Mr. Laurie objected, and the witness

19  said, "I don't."  I would move to strike the

20  objection.

21          THE COURT:  Okay.  All right.  So it's

22  line 5 through 8, right?  Am I right?

23          MR. BRICKELL:  No, I'm asking that the

24  objection be stricken.

25          THE COURT:  Oh, I'm sorry.  Just the

1    objection, line 7?

2                  MR. BRICKELL:  Yes.

3                  THE COURT:  Oh, okay.

4                  MR. BRICKELL:  On page 56, I asked a

5    question on line 18, Mr. Laurie objected, and then I

6    rephrased the question.  I would  propose that lines

7    18 through 23 be stricken.

8                  (Pause.)

9                  THE COURT:  So your question then would

10   be beginning on 24.

11                 MR. BRICKELL:  Yes, your Honor.

12                 THE COURT:  Okay.  Is there any

13   objection?

14                 MR. LAURIE:  No, your Honor.

15                 THE COURT:  All right.  Stricken.

16                 MR. BRICKELL:  Line 24 I ask a question

17   about whether Mrs. Mali told the witness something.

18                 THE COURT:  Um-hum.

19                 MR. BRICKELL:  Mr. Laurie objected and

20   then the witness answered.  I would ask that the

21   objection be stricken.

22                 THE COURT:  Which one are you asking to

23   be stricken?

24                 MR. BRICKELL:  I'm asking that line 2

25   on page 57 --

| | |
|---|---|
| 1 | THE COURT:  Just that line. |
| 2 | MR. BRICKELL:  Just that line. |
| 3 | THE COURT:  Sir? |
| 4 | MR. LAURIE:  I'll withdraw my |
| 5 | objection. |
| 6 | THE COURT:  Thank you. |
| 7 | MR. BRICKELL:  On page 58, the first 8 |
| 8 | lines should be stricken. |
| 9 | THE COURT:  Well, it's clear who was |
| 10 | asking the question, right, on line 9? |
| 11 | MR. BRICKELL:  There's a new question |
| 12 | beginning on line 9. |
| 13 | THE COURT:  Yes, I know, but it's clear |
| 14 | who's asking the question if you strike those lines, |
| 15 | right?  It's a continuing question, continuing |
| 16 | inquiry, so we don't have to have that line. |
| 17 | MR. BRICKELL:  Correct. |
| 18 | THE COURT:  Okay. |
| 19 | MR. BRICKELL:  On page 60, line 24. |
| 20 | THE COURT:  Um-hum. |
| 21 | MR. BRICKELL:  The question posed is, |
| 22 | "Does that refresh your recollection that you actually |
| 23 | did speak with somebody to determine whether Mr. Cady |
| 24 | worked with Mr. Washington?"  And then there's |
| 25 | objection, and then I rephrase the question.  I |

1  believe the objection is inappropriate and should be

2  stricken.

3             MR. LAURIE:  I'll state that it's not

4  inappropriate, but I'll withdraw the objection.

5             THE COURT:  All right.  Thank you.

6             MR. BRICKELL:  There's an additional

7  objection on line 10, I would ask that it be stricken.

8             MR. LAURIE:  I'll withdraw that.

9             THE COURT:  Thank you.

10             MR. BRICKELL:  If you'll go to page 62

11  please.  There's a colloquy between myself and Mr.

12  Laurie starting on line 18 that runs through page 63,

13  line 2.  I would ask that that be stricken.

14             MR. LAURIE:  We agree, your Honor.

15             THE COURT:  Thank you.

16             MR. BRICKELL:  On page 63, line 8, I

17  had written, "So you wrote to the boss we do not have

18  an expert to confirm the cost of replacement,

19  correct?"  And Mr. Laurie objected and then the

20  witness answered.  He didn't state a basis for the

21  objection and I would request that the objection be

22  stricken.

23             MR. LAURIE:  I'll withdraw the

24  objection.

25             THE COURT:  Thank you.

1           MR. BRICKELL:  On page 64, your Honor,

2  I asked a question beginning on line 10, Mr. Laurie

3  objected, didn't state the basis for the objection.  I

4  would ask that that objection be stricken.

5           THE COURT:  Your witness answered it.

6  So that would be line 14?

7           MR. BRICKELL:  Line 14, yes.

8           MR. LAURIE:  (Unintelligible.)

9           THE COURT:  Thank you.

10          MR. BRICKELL:  There's an additional

11 question on line 16 that Mr. Laurie objects to.  We'd

12 ask that that objection be stricken.

13          (Pause.)

14          MR. LAURIE:  I'll withdraw the

15 objection.

16          THE COURT:  Thank you.

17          MR. BRICKELL:  Next I would ask your

18 Honor to turn to page 68.

19          THE COURT:  68?

20          MR. BRICKELL:  68.  I asked a question

21 on line 19, "Were you taken off the file," on line 20

22 the witness said, "Not taken off."  Mr. Laurie

23 objected, asked and answered, and then the witness

24 continued his answer on 22.  I would ask that the

25 objection be stricken.

```
 1                    MR. LAURIE:  I'll withdraw it.

 2                    THE COURT:  Thank you.

 3                    MR. BRICKELL:  Next is page 69, line 3.

 4   I asked the witness, "Have you worked on other claims

 5   in the past where somebody else was handling the file

 6   and you took over for them?"  And the objection is on

 7   relevance grounds.  And then I said, "You can answer."

 8   I would ask that lines 6 and 7 be withdrawn.

 9                    MR. LAURIE:  I don't -- I don't

10   understand why other claims that he may have been

11   involved with is relevant to this case.

12                    MR. BRICKELL:  I can answer that, your

13   Honor.

14                    THE COURT:  Yes.

15                    MR. BRICKELL:  Mr. Padovani worked for

16   Chubb for 31 years.

17                    THE COURT:  Um-hum.

18                    MR. BRICKELL:  He handled this case for

19   six months.  At the end of six months he was no longer

20   working on the file.  He doesn't recall the

21   circumstances of leaving the file.  So I asked him,

22   "In the 31 years that you've been there, had you ever

23   been taken off a file before?"  And he said not that I

24   can recall.

25                    This goes to credibility, your Honor.
```

| | |
|---|---|
| 1 | THE COURT:  He says, "I don't know." |
| 2 | MR. LAURIE:  Yeah, and he didn't -- he |
| 3 | testified that he didn't recall whether he was taken |
| 4 | off the file or whether he recommended to -- |
| 5 | THE COURT:  Well, wait a minute, |
| 6 | gentlemen.  The answer he gave was not I don't recall, |
| 7 | it was, "I don't know." |
| 8 | MR. LAURIE:  Right. |
| 9 | MR. BRICKELL:  Which we would -- |
| 10 | THE COURT:  (Unintelligible). |
| 11 | MR. BRICKELL:  -- respectfully submit |
| 12 | is better for us because this man is testifying that |
| 13 | he worked on the case for six months, made a mistake |
| 14 | on how the coverage was reported, was removed or asked |
| 15 | to come off the file, or volunteered to come off the |
| 16 | file, but doesn't recall what exactly happened.  And |
| 17 | that goes to his credibility. |
| 18 | MR. LAURIE:  Your Honor, he's putting |
| 19 | the cart before the horse.  He's focusing his argument |
| 20 | on the answer.  I'm focusing my argument on the |
| 21 | question.  The question is not proper because there's |
| 22 | no relevance here.  There's no statutory bad faith |
| 23 | claim here, your Honor, in which other claim files |
| 24 | might be or might not be relevant.  This cases does |
| 25 | not -- that claim is not an issue.  There is no -- but |

1    what Mr. Padovani did or didn't do on other claims or

2    what happened on other claims is not relevant.

3                    MR. BRICKELL:  Your Honor, if you work

4    in a company for 31 years and something never happened

5    in the 31 years and you couldn't recall an instance

6    where you're working on a file and somebody else took

7    over the file, it's very, very important to your

8    credibility that you say you can't recall why it was

9    that you were no longer working on this file.

10                   The jury is entitled to know that this

11   man never had this happen to him in 31 years.

12                   THE COURT:  That isn't what he said.

13   He says, "I don't know."

14                   MR. LAURIE:  (Unintelligible), we're

15   reading in -- I mean that's just not what he says.

16                   THE COURT:  No, he said, "I don't

17   know."

18                   MR. BRICKELL:  And that, your Honor, I

19   would submit --

20                   THE COURT:  Not that it didn't happen.

21                   MR. BRICKELL:  I would submit that the

22   fact that he's saying he doesn't recall, nothing else

23   stands out in his mind.  And respectfully, it is

24   relevant to his credibility.

25                   MR. LAURIE:  I completely disagree,

1    your Honor.  You know, the fact that the man worked

2    for 31 years at Federal Insurance Company in and of

3    itself reflects the fact that he worked on many, many,

4    many, many, many, many claims.

5                    THE COURT:  Presumably.

6                    MR. LAURIE:  You know, for us to create

7    a negative inference about this gentleman merely

8    because he can't recall the circumstances of every

9    claim, at five years after he worked for -- he's been

10   retired for five years.  I mean that's -- I think

11   that's a bit of a stretch.  And, you know, Mr.

12   Brickell, Attorney Brickell is focusing his question

13   on the answer.  The question is involved.  There's

14   just no -- there's no reason to drag information or

15   testimony regarding other claims into this case.

16                    THE COURT:  What is the relevance?

17   You're saying it goes to his credibility; is that your

18   claim?

19                    MR. BRICKELL:  It goes to his

20   credibility, your Honor.  It's patently incredible

21   that a man would work on a file for six months, no

22   longer work on the file anymore, and not recall why he

23   no longer worked on the file.

24                    MR. LAURIE:  With all due respect, your

25   Honor, he came off the file in 2005.  He retired in

1    2006.  It is now 2011.  We're asking a lot of this

2    poor -- and besides the point he's going in -- he went

3    in for bladder cancer surgery that, you know, a couple

4    of days removed from this.  I think, you know, it's a

5    stretch to, you know, generate a negative inference

6    about this person's credibility based on this far-

7    fetched question.

8                    THE COURT:  I think I'm going to strike

9    line 6 and 7.  That leaves the question asked and

10   answered.

11                   MR. LAURIE:  Thank you, your Honor.

12                   THE COURT:  Thank you.

13                   MR. BRICKELL:  Line 17 through 22

14   should probably come out as well, your Honor.

15                   THE COURT:  I would agree.  Do you,

16   gentlemen?  Or you're taking a break?

17                   MR. LAURIE:  Yes.

18                   THE COURT:  Okay.  That comes out.

19                   MR. BRICKELL:  On page 70, your Honor,

20   and we're almost done with my portion of the exam.

21   Page 70, line 16, I asked, "You actually recall having

22   that conversation," and the witness answered, Mr.

23   Laurie objected, and I would ask that the objection be

24   stricken.

25                   MR. LAURIE:  We agree, your Honor.

```
 1                    THE COURT:  Thank you.
 2                    MR. BRICKELL:  And my examination ends
 3   on page 71, line 11.
 4                    THE COURT:  Okay.  Why don't we strike
 5   lines 11 through 13 too?
 6                    MR. BRICKELL:  Well, I can leave in, "I
 7   have no further questions."
 8                    THE COURT:  Excuse me?
 9                    MR. BRICKELL:  We can leave in, "I have
10   no further questions."
11                    THE COURT:  Oh, I'm sorry, yes.  No,
12   just the videographer's statement there.  I don't see
13   any point in leaving that in.
14                    MR. BRICKELL:  May I continue with --
15                    THE COURT:  Certainly.
16                    MR. BRICKELL:  -- the Defendant's
17   portion of the exam?
18                    THE COURT:  Yes.
19                    MR. BRICKELL:  Thank you, your Honor.
20                    I raise a question about page 72, lines
21   13 through page 74, line 13.  There's a long section
22   where Mr. Laurie recites Exhibits 1 through 20 being
23   in evidence.  Since it's not objected to perhaps we
24   can shorten the record by removing that.
25                    THE COURT:  Beginning on line 13, is
```

1   that what you're saying?  And going how far?

2                     MR. BRICKELL:  It's -- I haven't spoken

3   to Mr. Laurie about this, but from 72 --

4                     THE COURT:  Yes.  He's on his feet,

5   he's going to respond.  But I just want to know what

6   you're asking to strike.  Everything from 13 --

7                     MR. BRICKELL:  From 72, line 13 --

8                     THE COURT:  Yeah, through?

9                     MR. BRICKELL:  Through 74, line 13,

10  where I say I don't object to the exhibits.  There was

11  some colloquy because I didn't agree with the way Mr.

12  Laurie described some of the exhibits, but I said I

13  don't object to them being in evidence.  So if they're

14  already going to be in evidence this recital is not

15  necessary.

16                     THE COURT:  I think -- why don't we

17  strike from there from -- on 13 on 72 --

18                     MR. LAURIE:  If I can plead a bit of

19  context.

20                     THE COURT:  Yes.

21                     MR. LAURIE:  We have, we've provided

22  our exhibits to Plaintiffs' counsel.

23                     THE COURT:  Yes.

24                     (End of Tape 1, side A.)

25                     (Tape 2, side B.)

1

2          MR. LAURIE:  ... started with a large

3  number and trying to reduce the number of exhibits as

4  the case progressed, and I've communicated the same.

5  We have gotten only a fairly discrete number of

6  objections to the exhibits, which is fine.  But what

7  we're trying to avoid here, what I was trying to avoid

8  is to get a stipulation on the record so that -- that

9  there were no objections to these exhibits because

10  there never had been, so that way I knew where I was

11  going with respect to my inquiry and I've asked the

12  proper amount of questions or not.

13          So long as there's a stipulation on

14  this record that there's no objection to Exhibits 1

15  through 20 --

16          THE COURT:  Yeah.

17          MR. LAURIE:  -- then I think

18  Defendant's Exhibits 1 through 20 then I think are

19  fine.

20          THE COURT:  And we can remove that

21  because we now have this on the record.

22          MR. LAURIE:  Okay.

23          THE COURT:  Right?  And I'm saying

24  before I'm putting that before a jury --

25          MR. LAURIE:  Your Honor, should I

1    identify the exhibits themselves?  That's all I was

2    trying to do is --

3                    THE COURT:  Yes.

4                    MR. LAURIE:  -- is identify on the

5    record the exhibits that have been offered in --

6                    THE COURT:  But why would that be

7    necessary, sir?  I'm not sure why you would want to do

8    that.

9                    MR. LAURIE:  In Judge Droney's order he

10   required the parties to exchange exhibits.

11                   THE COURT:  Yes.

12                   MR. LAURIE:  And to exchange objections

13   to exhibits.

14                   THE COURT:  Yes.

15                   MR. LAURIE:  All I'm trying to do is to

16   confirm the fact that Attorney Brickell doesn't have

17   objections to our universe of documents, our universe

18   of exhibits.  So that way it's not trial by surprise

19   when we're at trial and all of a sudden you have new

20   objections.

21                   THE COURT:  Yeah, I understand that.  I

22   just wondered how reading it into the videotape itself

23   enlightens the jury.

24                   MR. LAURIE:  Oh, no, no.  That can come

25   out.

```
 1                    THE COURT:  Oh, okay.

 2                    MR. LAURIE:  Yes, so long we're all in

 3   agreement that, you know, the objections are what they

 4   are and that the documents that, you know, the

 5   Exhibits 1 through 20, he has no objections to and

 6   they come in as exhibits.

 7                    THE COURT:  And that's correct,

 8   Counsel, right?

 9                    MR. BRICKELL:  Yes, your Honor.

10                    THE COURT:  Yeah, I don't see any point

11   in making a jury sit through that.

12                    MR. LAURIE:  Okay.

13                    THE COURT:  Okay?  There's an

14   agreement.  So it would be line 13 on page 72 --

15                    (Pause.)

16                    THE COURT:  Oh, I see, yes.  Lucia just

17   pointed out --

18                    MR. BRICKELL:  See, I left that in

19   because that was the thing that Mr. Laurie wanted,

20   which is that we had an agreement with regard to

21   Exhibits 1 through 20.

22                    THE COURT:  But the jury doesn't have

23   to hear about this.  I think that sort of thing

24   confuses them.

25                    MR. LAURIE:  No, I agree.  I appreciate
```

1   that, (unintelligible).  As long as we have it on the

2   record now I don't think the jury needs to hear it.

3                    MR. BRICKELL:  So page 71, line 20 --

4                    THE COURT:  Yes.

5                    MR. BRICKELL:  -- through page 72, line

6   2 would also come out.

7                    THE COURT:  Yes.

8                    MR. BRICKELL:  Thank you, your Honor.

9                    (Pause.)

10                   THE COURT:  Yeah, how about line 13 and

11  through to page 20 -- 74, I believe.  Line 13 on 72

12  through line 13 on 74.

13                   MR. BRICKELL:  Yes, your Honor.

14                   THE COURT:  Okay?

15                   MR. BRICKELL:  I thank you for that

16  indulgence.  Now I'm coming to the portion where there

17  are the objections to leading questions, which is what

18  your Honor thought we were going to cover this

19  morning.

20                   THE COURT:  Yeah.

21                   MR. BRICKELL:  Page 75.

22                   THE COURT:  Um-hum.

23                   MR. BRICKELL:  The first question

24  that's asked, Mr. Laurie asks, "In speaking with Mr.

25  and Mrs. Mali, did they provide you with a listing of

1  rooms that existed in the living area of the barn

2  structure prior to the fire?"  And the witness

3  answered, "Yes."  I then stated an objection that he

4  was leading the witness.

5              Now, what we saw in some of the

6  discussion from my examination this morning is that

7  Mr. Padovani didn't recall a lot of things.  Many

8  times he didn't recall things that one would expect

9  him to have recalled.

10             So on cross examination what Mr. Laurie

11 did was he loaded up the questions with all of the

12 facts instead of having the witness tell the story,

13 and the witness, with prompting from counsel, said yes

14 in many, many occasions.  And what you have is you

15 have a witness who doesn't recall fundamental things

16 is now recalling on cross examination the details of

17 conversations because the questions are posed that

18 way.  So I objected right at the outset.

19             We've had a back and forth with regard

20 to Federal Rule of Evidence 611C and how the advisory

21 notes say that the word ordinarily, that a lawyer

22 cross examine the witness called by the other side

23 ordinarily has the right to use leading questions does

24 not apply when, in effect, this is your own witness.

25             Now, they've claimed that Mr. Padovani

1   hasn't worked there for five years, but he is their

2   witness, they drove to the deposition with him; he

3   showed up together with Mr. Laurie and Mr. Seiger;

4   they walked in together into the room; they obviously

5   had talked about the deposition before the examination

6   itself; and in every instance I objected saying

7   please, let the witness tell the story, it's

8   inappropriate for you to lead him.  And on a number of

9   occasions Mr. Laurie just kept going forward asking.

10  This is the first instance where I said you really

11  shouldn't lead the witness.  Let him tell you what the

12  conversation was; let him tell you what he recalls.

13              In this instance he actually puts into

14  the question what it was that Mr. and Mrs. Mali

15  supposedly told him on a particular occasion, after

16  the man had said he didn't recall any of the details

17  of the conversations.  And so we would move to strike

18  from line 1 through line 21 on page75.

19              MR. LAURIE:  Couple of points, your

20  Honor.  Is it okay if I talk from back here?  Can you

21  hear me clearly?  Okay.

22              I take issue with a lot of what

23  Attorney Brickell said about the characterization of

24  our relationship with Mr. Padovani.  We didn't drive

25  to the deposition with him.  Yeah, we walked in

1    together, we saw him there, and we utilized the same

2    parking lot.  I take issue with that.  He's not our,

3    quote/unquote, our witness.  He was responding to

4    their subpoena, okay?

5              He has not been employed by Federal

6    Insurance Company for five years.  It's not a stretch

7    to say that his recollection may have been on direct

8    or even on cross.  You'll see a lot of these he

9    responds to what they contend to be leading questions

10   in -- with an "I don't recall."  So I got the same

11   sort of responses that Attorney Brickell got.

12             You know, we argued with respect to

13   611C.  There's no prohibition with respect to it.  We

14   recognize what the advisory notes say.  We believe

15   that these questions in large part were proper, and to

16   the extent that they were leading questions, they were

17   done so to expedite the witness' testimony.  They were

18   used to a certain extent like topic sentences.  This

19   is what you testified to previously, topic sentence

20   further -- and the further colloquy were open

21   questions that did not suggest a response from the

22   witness.

23             So, you know, I take issue with the

24   general characterization that Attorney Brickell just

25   made with respect to the deposition testimony.

1          With respect to this particular back

2    and forth, you know, first and foremost, Attorney

3    Brickell seeks to strike questions and answers that he

4    never objected to.  With all due respect, you know, he

5    has waived his opportunity to object to questions --

6    and we just lined it up because it's not on the

7    motion, but line 17 through page 76, line 2, there's

8    no objection to that.  There was no objection to that

9    made at the time.  If this were trial that, you know,

10   that ship would have sailed.

11          THE COURT:  I'm going to overrule the

12   objection and we're going to strike lines 6 through

13   18.

14          MR. BRICKELL:  Thank you, your Honor.

15          On page 76 there's a colloquy on line 7

16   and 9 that should come out.

17          THE COURT:  7 to 9.

18          (Pause.)

19          THE COURT:  All right, gentlemen?

20          MR. LAURIE:  What page did you say?

21          MR. BRICKELL:  76, line 7 to 9.

22          MR. LAURIE:  Oh, I see.  All right.

23   I'm distracted by the highlighting.  That's okay.

24          MR. BRICKELL:  And I would withdraw the

25   objection on line 19.

```
 1                    THE COURT:  Okay.  Thank you.

 2                    MR. BRICKELL:  I would withdraw the

 3    objection on page 77, line 8.

 4                    THE COURT:  Thank you.

 5                    MR. BRICKELL:  On page 77, line 24 --

 6                    THE COURT:  Um-hum.

 7                    MR. BRICKELL:  -- there was a question

 8    posed, "Was this list provided to you as you walked

 9    through the remnants of the fire scene?"  And I

10    objected because he didn't ask the witness where the

11    document came from.  He provided the information.

12                    THE COURT:  What was that again,

13    please?

14                    MR. BRICKELL:  77 --

15                    THE COURT:  Yeah, no, no, I've got

16    that.  What did you say?

17                    MR. BRICKELL:  The witness was asked

18    when he was provided with a certain list.

19                    THE COURT:  Right.

20                    MR. BRICKELL:  But instead of being

21    asked when he was provided with a certain list, he was

22    told -- the question said were you provided it at this

23    time, which is inappropriate leading.

24                    MR. LAURIE:  Your Honor, he already

25    testified to that.  There was simply further, you
```

1  know, further in his prior testimony it was on -- I

2  mean it's all over the place, but --

3               MR. BRICKELL:  If he's already

4  testified to it then we don't need it.

5               MR. LAURIE:  Well, that's not accurate.

6  I mean if --

7               THE COURT:  I'm going to overrule the

8  object -- I'm overruling the objection.

9               MR. BRICKELL:  So just line 2 on page

10 78 comes out?

11              THE COURT:  Yes.

12              MR. BRICKELL:  I would propose that

13 lines 16 through 18 on the same page come out.

14              THE COURT:  Sure.  That makes sense.

15              All right, gentlemen?

16              MR. LAURIE:  Yes.  Yes, thank you.

17              MR. BRICKELL:  The next entry, your

18 Honor, is on page 79.

19              THE COURT:  Um-hum.

20              (Pause.)

21              MR. BRICKELL:  Beginning on line 20 Mr.

22 Laurie asks a question and I objected to it.  I asked

23 that the question and answer be stricken.

24              MR. LAURIE:  Your Honor, this is --

25 this goes with the testimony that -- this is a follow-

1   up question to the testimony that he provided

2   beginning on line 15 of that page.  It's simply to

3   clarify that prior testimony.

4                    THE COURT:  Yes, I'll overrule the

5   objection, and lines 23 and 24 are stricken as is the

6   line 1 and 2 on the following page.

7                    THE CLERK:  (Unintelligible.)

8                    THE COURT:  Well, 1 and 2, right?

9                    THE CLERK:  Just 1, because 2 is his

10  answer (unintelligible).

11                   MR. BRICKELL:  Line 1 on page 80 comes

12  out also.

13                   THE COURT:  Oh, I'm sorry.  She's

14  correct.  Line 2 is the answer to the question which I

15  left on the preceding page.  You're right, Lucia,

16  thank you.

17                   So just 1, line 1 on that page comes

18  out.

19                   MR. BRICKELL:  On page 82 I would

20  withdraw the objection on lines 11 and 12.

21                   THE COURT:  Okay.  Thank you.

22                   MR. BRICKELL:  Page 86 --

23                   THE COURT:  Excuse me just a minute.  I

24  want to ask my Clerk something.

25                   (Pause.)

```
 1                    THE COURT:  I'm sorry.  Okay.  Go
 2   ahead.
 3                    MR. BRICKELL:  Page 86.  I would
 4   withdraw the objection on line 15.
 5                    THE COURT:  Thank you.
 6                    MR. BRICKELL:  On page 87 I would
 7   withdraw the objection on line 15.
 8                    THE COURT:  Okay.
 9                    MR. BRICKELL:  On line 23 I would
10   withdraw that objection as well.
11                    THE COURT:  Okay.  Thank you.
12                    MR. BRICKELL:  Page 89, line 5.
13                    THE COURT:  Yes, sir.
14                    MR. BRICKELL:  I would withdraw the
15   objection.
16                    THE COURT:  Thank you.  Line 5, um-hum.
17                    Mr. BRICKELL:  Next is page 92, your
18   Honor.
19                    THE COURT:  Yes, sir.
20                    MR. BRICKELL:  There is a question
21   asked on line 2, I objected and Mr. Laurie restated
22   the question.
23                    THE COURT:  Yes.
24                    MR. BRICKELL:  I would ask that lines 2
25   through 7 be deleted and that line 8 begin with the
```

1    word do.

2                    THE COURT:  Exactly what I think is

3    right, yes.  I agree with that.

4                    MR. LAURIE:  Yes, that's fine.  Thank

5    you.

6                    MR. BRICKELL:  Page 98.

7                    THE COURT:  Yes.  Yes, sir.

8                    MR. BRICKELL:  Line 23, there is a

9    question posed, "Do you know how, do you have an

10   understanding as to what this estimate was based on,"

11   and the answer is, "I recall him saying he met with

12   the insured as I did and she told him what was there."

13   We objected on hearsay grounds.

14                   MR. LAURIE:  He objected to the answer,

15   your Honor.  He didn't object to the question.  The

16   question didn't call for hearsay.

17                   THE COURT:  Well, if we leave the

18   question in and strike the answer, we have no answer.

19                   MR. LAURIE:  No, I'm saying -- that

20   wouldn't be good.  But what I'm saying is the question

21   was proper.

22                   THE COURT:  Yes, um-hum.  So the

23   objection actually is to the answer, but it makes no

24   sense.

25                   MR. LAURIE:  Well, the objection came

```
 1   after the fact and, you know, when you presumably
 2   realized that his answer was based on someone else's
 3   statement, but the question itself asks for his
 4   understanding as to what the estimate was based on.
 5                THE COURT:  Yeah.  It would have to --
 6                MR. BRICKELL:  Your Honor, the question
 7   and answer have to come out.  It doesn't make sense
 8   any other way.  He's testified somebody told me
 9   something.
10                (Pause.)
11                MR. LAURIE:  Your Honor, he's -- what's
12   being relayed here is an admission by the insured as
13   well, so it's --
14                THE COURT:  Well, but it's hearsay.
15   The admission comes in through -- as hearsay.  I know
16   what you're saying.
17                MR. LAURIE:  Okay.  All right.  Sorry
18   about that.
19                THE COURT:  I'm going to sustain the
20   objection, which means that we strike 23 and 24 on
21   page 98, and 1, 2 and 2 on 99.
22                By the way, sir -- Brickell, is that
23   the way you pronounce your name?
24                MR. BRICKELL:  Brickell, yes.
25                THE COURT:  Okay.
```

 1                    MR. BRICKELL:  On page 100 I withdraw

 2    the objection on line 3.

 3                    THE COURT:  Okay.  Thank you.

 4                    MR. BRICKELL:  On page 101 I withdraw

 5    the objection on line 11.

 6                    THE COURT:  All right.  Thank you.

 7                    MR. BRICKELL:  Page 103, your Honor.

 8                    THE COURT:  Yes, sir.  103?

 9                    MR. BRICKELL:  103.

10                    THE COURT:  Um-hum.

11                    MR. BRICKELL:  There are two questions,

12    one beginning on line 1, one beginning on line 11,

13    where the witness is provided with the information and

14    asked to verify it and they're both leading questions.

15    We would ask that they -- both the questions and

16    answers from line 1 through 21 be stricken.

17                    MR. LAURIE:  Well, your Honor, I don't

18    believe that these questions are leading.  They don't

19    suggest the answer.  The first one, you know, it asks

20    do you believe that the numbers -- he asked how he

21    understands the numbers he utilized that come in in

22    the same range as Mr. Washington's estimate.  And then

23    he did provide -- he doesn't answer yes or no, he

24    provides an explanation.

25                    And in the second question beginning on

 1  line 11 it just asks him for his explanation as to the

 2  difference between the two prices.  So it doesn't

 3  suggest an answer.  They're open-ended.

 4                    (Pause.)

 5                    THE COURT:  Do you want to claim the

 6  objection, sir?

 7                    MR. BRICKELL:  I stand on the

 8  objections.  If your Honor will rule on whether

 9  they're leading questions.

10                    THE COURT:  The objection stated on

11  line 5 is overruled as is the objection on 15.

12                    MR. BRICKELL:  Thank you, your Honor.

13                    I would next ask you to turn to page

14  106.  The objection on line 12 is withdrawn.

15                    THE COURT:  Thank you.

16                    MR. BRICKELL:  On page 108 the

17  objection on line 20 is withdrawn.

18                    THE COURT:  Okay.

19                    MR. BRICKELL:  On page 109, your Honor,

20  beginning on line 4, the question is, "Did you explain

21  the reason you were asking for the additional

22  information was because her position was inconsistent

23  with the story she had told you previously?"  I

24  objected on leading grounds, and the witness said,

25  "Yes, I addressed those points with her."

1          During his direct examination he had no

2   recollection of the conversations with Mrs. Mali, and

3   now because counsel has put the facts into the

4   question, he said yes, now I remember.

5          MR. LAURIE:  Well, your Honor, this was

6   -- I believe this testimony was in response to me

7   refreshing his memory.  And let me just check to

8   confirm.

9          (Pause.)

10          MR. LAURIE:  Yeah, it -- I put before

11   the witness a claim entry concerning the conversation

12   he had with the insured.

13          MR. BRICKELL:  From the Claims Vision

14   file.

15          MR. LAURIE:  Correct.  Well, I used it

16   properly, your Honor.  I took the entry from him and

17   then I asked him if he -- specific questions as to his

18   recollection.  Attorney Brickell never showed him that

19   claim entry, never asked him about the final

20   conversation that he had with the insured, so I don't

21   under -- it's a mischaracterization to say that he

22   didn't recall anything about this.  I asked him if he

23   recalled the conversation, he said he did not.  I put

24   his claim entry in front of him, asked him to review

25   it, took it from him and then asked him questions.

1              So it's -- the characterization about

2  this back and forth is, well, flatly wrong.

3              With respect to the questions, there is

4  -- you know, they're foundational in nature and

5  they're just clarifying prior testimony.  It's --

6              MR. BRICKELL:  This witness didn't

7  remember anything and counsel put all of the facts on

8  the record and he just said yes.

9              MR. LAURIE:  That's not it at all, your

10  Honor.  That's a gross mischaracterization of the

11  questions and answers that were provided.  Mr.

12  Padovani said I don't recall to me repeatedly.  Just

13  because I utilized the exhibit in a proper way does

14  not mean that there was conspiracy concocted between

15  myself and the witness.  That's just crazy.

16              And, your Honor, I'll direct your

17  attention to the -- page 107, line 12 it begins with,

18  in which I say, "I want you to take a look at what's

19  been numbered FIC0914," and that's the specific page

20  on the exhibit.

21              THE CLERK:  (Unintelligible.)

22              MR. LAURIE:  On line 12, page 107.

23  (Unintelligible) Exhibit 48 is the exhibit.

24              "Can you review that, have you had a

25  chance to review the claim note, does this claim note

1    refresh your memory as to what Mrs. Mali's reaction

2    was to your request for additional details to support

3    (unintelligible)."  That's the beginning, and then it

4    goes from there.

5                    (Pause.)

6                    THE COURT:  This claim is contingent on

7    the admissibility of that exhibit, isn't it?

8                    MR. LAURIE:  I don't -- I don't think

9    so.  I'm not reading from the exhibit.  I just

10   refreshed his memory with the exhibit.

11                   THE COURT:  She can't hear?  I'm sorry.

12   I'm sorry, dear.  Okay.

13                   (Pause.)

14                   THE COURT:  I'm going to sustain the

15   objections, both of those objections, line 8 and line

16   13.  Those objections are sustained.

17                   MR. BRICKELL:  So 4 through 14 are out?

18                   THE COURT:  So we have to take out 14,

19   which is the answer to the question.  So 8 -- no, 4

20   through 14.

21                   MR. BRICKELL:  Lines 4 through 14 are

22   out, your Honor?

23                   THE COURT:  4 through 14, yes.

24                   THE CLERK:  On what page?

25                   THE COURT:  On page 109.

```
1                    MR. LAURIE:  Your Honor --

2                    THE COURT:  Excuse me.

3                    MR. LAURIE:  -- and what was the basis?

4                    THE COURT:  Excuse me?

5                    MR. LAURIE:  I'm sorry.  What was the

6    basis of this --

7                    THE COURT:  Leading.

8                    MR. LAURIE:  Leading.  Okay.  Thank

9    you, your Honor.

10                    THE COURT:  Yes, sir.

11                    MR. BRICKELL:  On page 110, your Honor.

12                    THE COURT:  Well, we still got an

13   objection on line 20.

14                    MR. BRICKELL:  Oh, sorry.  Yes, the

15   same objection for the question that's on lines 15

16   through 19.  Counsel has laid out all of the facts and

17   asked the witness if that was the case, and this was

18   after the witness had expressed no recollection of the

19   events.

20                    MR. LAURIE:  I disagree.  This goes

21   with the prior questions related to the claim entry in

22   which it develops prior testimony and helps move it

23   along.

24                    THE COURT:  It goes to what, sir?

25   Would you repeat that?
```

1            MR LAURIE:  This was part of a question

2   and answer concerning the claim entry that I refreshed

3   his memory with.

4            (Pause.)

5            THE COURT:  I'll overrule the objection

6   on line 20.

7            MR. BRICKELL:  You're overruling that?

8            THE COURT:  Yes, sir.  I'm overruling

9   that one.

10           MR. BRICKELL:  So line 20 comes out?

11           THE COURT:  Yes, sir.

12           MR. BRICKELL:  Page 110, your Honor.

13           THE COURT:  Yes, sir.

14           MR. BRICKELL:  Line 8, I withdraw the

15   objection.

16           THE COURT:  All right, sir.  Thank you.

17   How about line 14?

18           MR. BRICKELL:  Well, there's a question

19   on line 10 --

20           THE COURT:  Yes.

21           MR. BRICKELL:  -- that says, "Did Mrs.

22   Mali's refusal to provide additional information in

23   support of the C&L Restorations estimate prohibit you

24   from going forward with adjusting this claim?"  And I

25   objected that it assumes facts not in evidence.

1          MR. LAURIE:  He previously testified

2    that he had a conversation with Mrs. Mali in which he

3    requested information to support her estimate.  What

4    this is asking is, it is simply taking that testimony

5    and asking did that prevent you from moving forward.

6          THE COURT:  Are you able to report back

7    to what page you --

8          MR. LAURIE:  Yes, yes.  I believe I

9    can, your Honor.  Bear with me one second here.

10         (Pause.)

11         MR. BRICKELL:  And let me just state

12   for the record that after I objected the question was

13   rephrased, so the operative question is really lines

14   17 through 21.

15         THE COURT:  Oh.  That makes it moot

16   then, does it?  Oh, you -- you objected again though.

17         MR. BRICKELL:  Yes, but 10 through 16

18   should probably come out because it's rephrased.

19         THE COURT:  Yeah, that makes sense.

20   Then we have to address the objection on line 22.  So

21   we take out -- yeah, 10 through 16 comes out.  Then we

22   have the next objection to consider.  So, and you

23   claim that objection.

24         MR. BRICKELL:  Yeah.  I would like that

25   objection ruled on, please.

```
 1                    THE COURT:  Yes.  Counsel?

 2                    MR. LAURIE:  All right.  So if your

 3   Honor would look at, again it's 107, line 12.

 4                    THE COURT:  Yes.

 5                    MR. LAURIE:  And I asked him, I

 6   directed him to the claim entry.

 7                    THE COURT:  Yes.

 8                    MR. LAURIE:  And I say, on line 21,

 9   "Does the claim entry refresh your recollection as to

10   what Mrs. Mali's reaction was to your request for

11   additional details to support her C&L Restorations

12   estimate?"

13                    THE COURT:  Um-hum.

14                    MR. LAURIE:  Answer, yes.  Next

15   question.  "And what was her response to your

16   question?"  And then he provides a long answer.

17                    THE COURT:  Um-hum.

18                    MR. LAURIE:  Okay?  I take essentially

19   that testimony and I ask, "Did that prevent you from

20   moving the claim forward?"  Just cutting to the chase,

21   your Honor.

22                    (Pause.)

23                    THE COURT:  So we're dealing now with

24   the objection in line 20, and it's overruled.

25                    MR. BRICKELL:  On 110, line 22 and 23.
```

```
 1                         (Pause.)

 2                         THE COURT:  The objection in line 22 is

 3   overruled.

 4                         MR. BRICKELL:  22 and 23 are out.

 5                         THE COURT:  Yes, sir.  They are.

 6                         MR. BRICKELL:  Thank you, your Honor.

 7                         MR. LAURIE:  Are 14 and 15 out as well?

 8                         MR. BRICKELL:  10 through 16 are out.

 9                         MR. LAURIE:  10 through 16, okay.  All

10   right, all right.  Okay.  Sorry.  16.

11                         MR. BRICKELL:  We're up to page 112,

12   your Honor.

13                         THE COURT:  Yes, sir.

14                         MR. BRICKELL:  I would withdraw the

15   objection that begins on line 5 and recommended that

16   lines 5 through 11 be deleted.

17                         THE COURT:  Yes, sir.  We'll delete

18   those.  And how about lines 10 -- and 8 and through

19   11?

20                         MR. BRICKELL:  I think 5 through 11

21   should come out.

22                         THE COURT:  Yeah.

23                         MR. BRICKELL:  I mean do you have a

24   problem with that, Bob?

25                         MR. LAURIE:  Oh, I'm sorry.  I'm --
```

1    that's perfect.  Yeah, I moved on to the next one.

2                    THE COURT:  Oh, yeah, well, we'll take

3    out lines 8 through 11.

4                    MR. LAURIE:  Thank you.

5                    THE COURT:  Okay.  Yeah.  Okay.  The

6    next objection is line 23.

7                    MR. BRICKELL:  Yes, your Honor.  The

8    witness was shown a sketch and asked whether it

9    accurately reflected something, and it was

10   inappropriate.

11                   (Pause.)

12                   MR. LAURIE:  Your Honor, I'm just

13   asking the foundation for the exhibit.  He previously

14   testified that he was provided a room list, he

15   previously testified that Mrs. Mali showed him where

16   the rooms were located.  I'm asking him if this

17   photograph depicts that, or this rendering

18   (unintelligible).

19                   THE COURT:  Um-hum.  I'll overrule the

20   objection on line 23.

21                   MR. BRICKELL:  Line 23 is out?

22                   THE COURT:  Yes, sir.

23                   MR. BRICKELL:  Thank you, your Honor.

24                   On page 113, lines 13 through 15 should

25   come out.

```
 1                    THE COURT:  Yeah, okay.

 2                    MR. BRICKELL:  Page 114, if your Honor

 3   could rule on the objection on line 21.

 4                    (Pause.)

 5                    MR. LAURIE:  Your Honor, I'm just

 6   asking for his belief.

 7                    THE COURT:  I'll overrule the

 8   objection.

 9                    MR. BRICKELL:  Line 21 is out?

10                    THE COURT:  Yes, sir.

11                    MR. BRICKELL:  On page 115, I think if

12   we end on line 6 and continue to -- on line 14 on the

13   next page they should all come out.

14                    THE COURT:  Yeah.  Now, the end of line

15   -- so the question --

16                    MR. BRICKELL:  The question on line 7

17   has never been answered.

18                    THE COURT:  Yeah, okay.  Then we'll

19   strike those, as well as the rest of that page, right?

20                    MR. BRICKELL:  Yes, your Honor.

21                    THE COURT:  Line 7 through the bottom

22   of that page and continuing --

23                    MR. BRICKELL:  We should resume on 116,

24   line 15?

25                    THE COURT:  Yes, that's fine.
```

```
 1                         MR. LAURIE:  (Unintelligible.)

 2                         MR. BRICKELL:  Almost done.

 3                         Page 117, your Honor.

 4                         THE COURT:  What happened to 117?  Oh,

 5    I've got them out of order.  Yeah, now I've got it.

 6    Okay.

 7                         MR. BRICKELL:  I asked a question on

 8    line 2, there's an objection on line 5, and there's no

 9    basis stated for the objection.  We ask that the

10    objection be stricken, overruled.

11                         MR. LAURIE:  We'll withdraw it, your

12    Honor.

13                         THE COURT:  Thank you.

14                         MR. BRICKELL:  I would raise a

15    procedural question at this point, your Honor.

16                         THE COURT:  Yes, sir.

17                         MR. BRICKELL:  I believe the transcript

18    is inaccurate.

19                         THE COURT:  Oh.

20                         MR. BRICKELL:  There is a "not"

21    missing.

22                         THE COURT:  Where, sir?

23                         MR. BRICKELL:  The question says, "And

24    in two months" --

25                         THE COURT:  What line are we?
```

1           MR. BRICKELL:  I'm sorry.  Page 117 --

2           THE COURT:  Oh, it's the question we

3  were just addressing.

4           MR. BRICKELL:  Yes.

5           THE COURT:  Okay.

6           MR. BRICKELL:  "And in the two months

7  after you were advised that your analysis was

8  incorrect," the question that I asked was, "Once you

9  learned that your analysis was incorrect, did you make

10 any further offers," I believe the reporter got it

11 wrong.  Because no one told him his analysis was

12 correct.  Actually it's a moot point because it's on

13 video.

14          THE COURT:  Yeah, that's

15 (unintelligible).

16          MR. LAURIE:  Yeah.  I would just say

17 that we take the objection -- if it says what it

18 purports to say, then it's on video.

19          THE COURT:  Well, I'm not sure, are you

20 withdrawing your objection?

21          MR. LAURIE:  Yeah, we'll withdraw the

22 objection on line 5.

23          THE COURT:  Okay.  Okay.  We've got

24 another one on line 23.

25          MR. LAURIE:  That one I objected on the

1    basis that it calls for speculation.

2                    MR. BRICKELL:  Actually I'm ask --

3    sorry.

4                    MR. LAURIE:  I'm sorry.

5    (Unintelligible) state the basis, but that's why it

6    wasn't clear.

7                    MR. BRICKELL:  I simply asked the

8    witness if he tried to make his entries as accurately

9    and as fully as possible.

10                   MR. LAURIE:  Actually, I will withdraw

11   it, your Honor.  I'm sorry.

12                   THE COURT:  Thank you.

13                   MR. BRICKELL:  The next objection is on

14   page 118, line 6.

15                   MR. LAURIE:  We'll withdraw that.

16                   THE COURT:  Okay.

17                   MR. BRICKELL:  Then on lines 10 and 11.

18                   MR. LAURIE:  I'm going to stick with

19   that objection, your Honor.  That calls for

20   speculation.

21                   THE COURT:  No, he said no.  He says

22   are you aware of.  You're not speculating.  You either

23   are aware or you are not.  That's not speculation.

24                   MR. LAURIE:  Okay.

25                   MR. BRICKELL:  So 10 and 11 are out?

```
1                    THE COURT:  Hum?

2                    MR. BRICKELL:  10 and 11 are out.

3                    THE COURT:  Yeah, they come out.

4                    MR. LAURIE:  Thank you, your Honor.

5                    MR. BRICKELL:  And the last objection

6    is line 16.

7                    MR. LAURIE:  I'll withdraw that, your

8    Honor.

9                    THE COURT:  Okay.

10                   MR. BRICKELL:  If your Honor will turn

11   to page 120, please?  The colloquy at 12 to 17 should

12   come out.

13                   MR. LAURIE:  We agree.

14                   THE COURT:  Yes.

15                   MR. BRICKELL:  121.

16                   THE COURT:  Excuse me?  What did you --

17   120 --

18                   MR. BRICKELL:  Page 121.

19                   THE COURT:  Oh, page 121.  Thank you.

20   Okay.

21                   MR. BRICKELL:  We would ask for a

22   ruling on the objection on line 6.

23                   MR. LAURIE:  Your Honor, this is -- he

24   previously testified that there were inaccuracies and

25   C&L Restorations estimate.  What I'm asking is did
```

 1    that prevent you from making (unintelligible).

 2                   THE COURT:  I'll overrule the

 3    objection.

 4                   MR. BRICKELL:  So line 6 comes out.

 5                   THE COURT:  Yes, sir.

 6                   MR. BRICKELL:  Your Honor, those are

 7    the entries in the Padovani transcript that we thought

 8    your Honor needed to rule on.

 9                   THE COURT:  Thank you.

10                   MR. LAURIE:  Yes.

11                   THE COURT:  We've completed it, have

12    we?

13                   MR. LAURIE:  Yes, I have the -- I

14    actually have the --

15                   THE COURT:  You have the exhibit now?

16                   MR. LAURIE:  Yes.  Do you want the full

17    (unintelligible)?

18                   MR. BRICKELL:  Sure.

19                   (Pause.)

20                   MR. BRICKELL:  Your Honor?

21                   THE COURT:  Yes, sir.

22                   MR. BRICKELL:  We have the Claims

23    Vision file.  We've agreed that this is the proposed

24    Exhibit 48.  Can I hand it up?

25                   THE COURT:  Yes, sir.  Please.  Thank

```
 1   you.
 2                    (End of Tape 1, side B.)
 3                    (Tape 2, side A.)
 4                    THE COURT:  This I presume is being
 5   offered as a business record of the company, right?
 6                    MR. BRICKELL:  Yes, your Honor.
 7                    THE COURT:  Is there going to be
 8   somebody who qualifies it as such, testifying?
 9                    MR. BRICKELL:  We will introduce
10   testimony from both Mr. Padovani and from other
11   witnesses from Chubb.  If we need to put that in on
12   our direct case, we will.
13                    THE COURT:  Well, it has to be
14   qualified as a business record before we can admit it.
15                    MR. BRICKELL:  But it -- sorry.  It was
16   provided to us by Chubb.  It was a document that they
17   maintained in the ordinary course of their business.
18   They use it for their files, as Mr. Padovani said, as
19   they analyze claims.  It is their business record.
20                    MR. LAURIE:  That hasn't been
21   established yet.  Not to say that he can establish
22   that because he's got, you know, a number of other
23   Chubb Federal witnesses coming up.  You know, but that
24   has not been established in the record.
25                    THE COURT:  And you don't concede it.
```

1           MR. LAURIE:  Well, I don't.

2           THE COURT:  Yeah.  Okay.  So we'll have

3    to have somebody testify that this is in fact a

4    business record.  But once we get that then there's no

5    problem.

6           MR. BRICKELL:  Your Honor, I would

7    respectfully submit that Mr. Padovani said during his

8    deposition, which we covered today, that it is a Chubb

9    file, he uses it when he's working on a claim.  When

10   he wants to make entries he logs onto his computer,

11   goes to the Chubb file and makes entries into the

12   Claims Vision file.  It's a business record that they

13   maintain.  They produced it as one of their records in

14   this case.

15          THE COURT:  What about all the other

16   hearsay statements that are in there?

17          MR. BRICKELL:  I would be willing, as I

18   said at the very outset, to limit the use of the

19   document to the specific entries shown to witnesses.

20          THE COURT:  I can't let the whole thing

21   in because the jury will have it.

22          MR. BRICKELL:  Right.

23          THE COURT:  And if you're only using

24   portions of it perhaps you can, if you wish, arrange

25   those portions into a separate exhibit then if you

1  want to do it that way.

2            MR. BRICKELL:  I would be happy to do

3  that, your Honor.

4            MR. LAURIE:  Yeah, we'd consider those.

5  I mean not to say that those don't -- that those

6  particular entries don't have hearsay within hearsay

7  also, but I think that might be a faster way to --

8            THE COURT:  Yeah.  I think it would be

9  easier, and -- yeah.

10            MR. BRICKELL:  I can provide counsel

11  and the Court with a much smaller version of that

12  document which includes the pages that the witnesses

13  were shown.

14            THE COURT:  Okay.  That would be fine.

15  That would be fine.

16            MR. BRICKELL:  And under those

17  circumstances it's admitted?

18            THE COURT:  Yes.  Well, he --

19            MR. LAURIE:  Well, we have to look at

20  that first and then vet whether or not there's --

21            THE COURT:  You prepare it, show it to

22  counsel, and then I'll see what his objections, if

23  any, are.  I presume there won't be any.

24            MR. LAURIE:  I'm going to do my best,

25  your Honor.

```
 1                    (Pause.)

 2                    THE COURT:  Can we reserve --

 3                    MR. LAURIE:  Yeah.

 4                    THE COURT:  -- what we were talking

 5    about.

 6                    MR. LAURIE:  Yes.

 7                    THE COURT:  Until we -- we fill out --

 8    until I have the revised exhibit I can't rule on

 9    those.

10                    THE CLERK:  Unless we can do it now.

11                    MR. LAURIE:  You're right.

12                    THE COURT:  Unless you can identify the

13    pages that you have reference to.

14                    MR. LAURIE:  We should be able to do

15    that.

16                    MR. BRICKELL:  Would you like me to do

17    that now?

18                    THE COURT:  Fine, if you can.

19                    MR. LAURIE:  The only -- your Honor,

20    the only complicating factor is is that that's the

21    only copy, so we can't check and see what the

22    particular entry is, so we'll need a couple of copies

23    to work off of.  If we can make a couple of copies I

24    think we'll be okay.

25                    THE COURT:  We have some references in
```

```
 1    the transcript to this.

 2                     MR. LAURIE:  Yes.

 3                     THE COURT:  So until we know about the

 4    admissibility of this and the pages that are in this

 5    book, I can't really --

 6                     MR. LAURIE:  Oh, I understand that.

 7    What I'm saying is if we're going to address those

 8    particular entries, presumably Attorney Brickell and

 9    myself would need a copy of that document to work off

10    of.

11                     THE COURT:  And that's the only one you

12    got.

13                     MR. LAURIE:  Yes.

14                     MR. BRICKELL:  Your Honor, if I may.

15                     THE COURT:  Okay.

16                     MR. BRICKELL:  If your Honor reads

17    through the pages that we discussed today in this

18    session with that document in front of you, and turn

19    to the page that is identified when the witness is

20    asked questions, you can identify what pages are at

21    issue and whether there's any hearsay in there that

22    would make particular entries inadmissible.

23                     THE COURT:  Okay.  We'll try to do

24    that.  We'll try to go --

25                     MR. BRICKELL:  Is that fair?
```

```
 1                    THE COURT:  Yes.

 2                    MR. LAURIE:  One final -- can I just

 3   get a copy of that back because that's my only copy.

 4                    THE COURT:  Oh, you can have the whole

 5   thing back.

 6                    MR. LAURIE:  Okay, okay.  Terrific.

 7                    THE COURT:  Well, ultimately you'll get

 8   the whole thing back.  But we want to -- for the

 9   deposition -- and look what it is.  All right.  She's

10   going to make a copy.  Isn't that nice?

11                    MR. LAURIE:  That's perfect.  Thank

12   you.

13                    THE COURT:  You know, the Government

14   can't pay its bills, how are going to pay for that?

15                    MR. LAURIE:  Yeah, that's true.

16                    (Voices talking over each other.)

17                    THE COURT:  Make a copy of the whole

18   thing, please.  Make a copy of the whole thing.

19                    MR. LAURIE:  Your Honor, we just have a

20   couple of housekeeping issues.

21                    THE COURT:  Sure.

22                    MR. LAURIE:  One is the issue of the

23   juror yesterday.

24                    THE COURT:  Oh, yes.  I'm very upset

25   about that because it was obvious, it should have been
```

1   obvious to him that when people told me they had those

2   issues I excuse them.

3               MR. LAURIE:  Yeah, yeah.  Yeah, it was

4   unfortunate that he waited until after the fact.

5               THE COURT:  Well, we had provided for

6   two alternates, so he's gone.  And my practice, by the

7   way, is to allow the alternates to also deliberate if

8   counsel are in agreement on that.  So that would mean

9   there would be deliberation by seven people instead of

10  eight.

11              MR. LAURIE:  That's fine.

12              THE COURT:  Okay?  Yeah, I was really

13  quite offended by that because it was very clear

14  during the process that I was excusing people with

15  those issues, and he didn't raise it.

16              MR. LAURIE:  Yes.  We also ask that

17  there just be -- we requested that there be an order

18  of witnesses as far as, you know, when they're going

19  to be called.  We have a number of people who are not

20  parties to this case.

21              THE COURT:  I see.

22              MR. LAURIE:  They're third parties and

23  we'd like to try to --

24              THE COURT:  Something from the

25  Plaintiff about the order of witnesses?

 1              MR. LAURIE:  Yes.  Yes, please.

 2              THE COURT:  Can you help out on that?

 3              MR. BRICKELL:  One of the folks that I

 4   was going to be working with was this morning, that's

 5   why I had to move things around to be here this

 6   morning.

 7              THE COURT:  Oh, I'm sorry.

 8              MR. BRICKELL:  But I will probably be

 9   able to say what the first day and a half will be by

10   tomorrow morning.

11              THE COURT:  Okay.  Provide it to

12   counsel first.

13              MR. BRICKELL:  And I would want though,

14   if possible, we would like to show the Padovani tape

15   the afternoon of the first day.

16              THE COURT:  I don't care when you show

17   it, but do you have any objection to that?

18              MR. LAURIE:  No.  No.

19              THE COURT:  By the way, how is he now?

20   He was the one who had the surgery, wasn't he?

21              MR. LAURIE:  Yeah, he --

22              THE COURT:  Is he okay?

23              MR. LAURIE:  Well, I haven't heard from

24   him.  He had bladder surgery -- he had it removed on

25   Monday, so --

 1                    THE COURT:  Oh, well, I would assume

 2   that we can't hope for his presence.

 3                    MR. LAURIE:  Yeah, he's going to in the

 4   hospital --

 5                    THE COURT:  He ought to be allowed to

 6   recuperate.

 7                    MR. LAURIE:  Yes.

 8                    THE COURT:  Okay.

 9                    MR. LAURIE:  And one final thing, your

10   Honor, is we would just move under Rule 615 with

11   respect to the exclusion of witnesses prior to their

12   testimony from the courtroom.

13                    THE COURT:  Okay.  All right.  We'll

14   grant that motion.

15                    MR. LAURIE:  Thank you, your Honor.

16                    MR. BRICKELL:  I didn't hear what

17   counsel said.

18                    THE COURT:  He wants to have witnesses

19   outside, all witnesses outside the room while one

20   witness testifies.  Right?  (Unintelligible.)

21                    MR. LAURIE:  Yes, except of course Mrs.

22   Mali.

23                    THE COURT:  Oh, yes, of course.  Yeah.

24   So we will have them over -- we have a room on this

25   floor, haven't we?

1                    THE CLERK:  Yeah, it's over there.

2                    THE COURT:  Yeah.  Yeah, we have a room

3    we can keep them in while they're waiting.

4                    MR. BRICKELL:  Your Honor, witnesses

5    can be here for other portions of the case such as the

6    opening, correct?

7                    THE COURT:  Excuse me?

8                    MR. BRICKELL:  Can witnesses be here

9    for the openings?

10                    THE COURT:  The opening statements by

11    counsel?

12                    MR. BRICKELL:  Yes.

13                    MR. LAURIE:  Yeah, we wouldn't agree to

14    that.  It sort of defeats the purpose.  If they're

15    going to hear --

16                    THE COURT:  Yeah, I don't think they

17    should be present for that.

18                    MR. LAURIE:  Thank you, your Honor.

19                    (Pause.)

20                    THE COURT:  Ms. Brooks points out on

21    page 36 there is an objection we haven't addressed.

22                    MR. BRICKELL:  What line is --

23                    THE COURT:  Page 36, line 6.

24                    THE CLERK:  Line 12.

25                    THE COURT:  Line 12?

```
 1                    THE CLERK:  Yeah.

 2                    THE COURT:  Oh, I'm sorry.  Line 12.

 3                    MR. LAURIE:  We'll withdraw that.

 4                    THE COURT:  Okay.  Thanks.

 5                    MR. LAURIE:  Thank you.

 6                    (Pause.)

 7                    THE COURT:  Gentlemen, on page 45 of

 8    the transcript there is an objection in line 10.

 9                    (Pause.)

10                    MR. LAURIE:  We'll withdraw that.

11                    THE COURT:  Okay.  Thank you.

12                    (Pause.)

13                    THE COURT:  On page 48 we've got a

14    couple of objections we hadn't addressed.  There's an

15    objection in line 12.  Is this relating to the file

16    that's in question now?  Exhibit 48.

17                    MR. LAURIE:  Yeah, we'll withdraw that.

18                    THE COURT:  Okay.  Also there is

19    objection in line 18 -- 19.

20                    THE CLERK:  Yeah, but that deals with

21    -- that's been deleted by agreement.

22                    THE COURT:  Okay.  That's out.

23                    Line 18 on page 49.

24                    MR. LAURIE:  We'll withdraw that.

25                    THE COURT:  Okay.
```

 1              (Pause.)

 2              THE COURT:  On page 51 there's an

 3   objection on line 11.  I don't think we've addressed

 4   that, and again on line 17.

 5              THE CLERK:  Well, 17 --

 6              THE COURT:  We took care of that one?

 7   Okay.

 8              MR. LAURIE:  Yeah, we did, your Honor.

 9              THE COURT:  How about the objection in

10   line 11?

11              MR. LAURIE:  We'll withdraw it.

12              THE COURT:  Okay.  We're just trying to

13   check now that we've addressed all of them and I think

14   -- we hope that we have.

15              (Pause.)

16              THE COURT:  Just don't -- I want to be

17   sure we haven't left anything hanging, gentlemen, so

18   if you'll bear with us.

19              (Pause.)

20              THE COURT:  I think we've covered it

21   all.  I can't find any that haven't been addressed.

22              MR. LAURIE:  Good.  Thank you, your

23   Honor.

24              MR. BRICKELL:  Your Honor, may I ask

25   one more logistic question --

```
 1                   THE COURT:  Sure.

 2                   MR. BRICKELL:  -- while we're here

 3   today?  Part of our case will involve reading

 4   depositions into the record.  Would it be acceptable

 5   for purposes of doing that that I have my associate

 6   sit in the jury box and play act the role of the

 7   witness while I ask the questions, he answers the

 8   questions?

 9                   THE COURT:  Oh, I don't have any

10   problem with that unless counsel does.

11                   MR. LAURIE:  We have no objection to

12   him sitting in the witness box.

13                   THE COURT:  Yeah, not in the jury box.

14   I'm sure that was a misstatement.  You meant here, as

15   a witness.

16                   MR. BRICKELL:  Oh, he can't sit in the

17   jury box?

18                   THE COURT:  Huh?

19                   MR. BRICKELL:  He can't sit in the jury

20   box?

21                   THE COURT:  I don't think that would be

22   appropriate.

23                   MR. BRICKELL:  And so for the witness

24   stand.

25                   THE COURT:  He can sit in witness box,
```

```
 1   sure.
 2                   MR. BRICKELL:  Thank you, your Honor.
 3                   THE COURT:  Okay.
 4                   (Pause.)
 5                   THE COURT:  Is there anything else,
 6   gentlemen?
 7                   MR. LAURIE:  No, your Honor.
 8                   THE COURT:  A pleasant morning.  Thank
 9   you very much for your time.
10                   MR. LAURIE:  I had a good time.
11                   (Pause.)
12                   THE COURT:  Lucia is pointing out the
13   fact that we reserved on some objections until we
14   could examine 48.  So we still have that outstanding,
15   gentlemen.  Do you want to take your lunch and we'll
16   see if we can clarify that during the recess and you
17   can come back after lunch?  Or --
18                   (Pause.)
19                   THE COURT:  We'll need you.
20                   MR. BRICKELL:  Your Honor,
21   respectfully, could we do it by phone this afternoon?
22   I have a two-hour drive back to my office.
23                   THE COURT:  Ooh, wow.  Where's your
24   office?
25                   MR. BRICKELL:  New York City.
```

 1                    THE COURT:  New York City.  Good luck

 2   on the two hours, especially at that merger of 91 and

 3   95.

 4                    Do you think we can do it by phone?

 5                    THE CLERK:  Well, you're going to have

 6   to do up on page 10, all of this, all of this deals

 7   with exhibit -- with portions of Exhibit 48 that

 8   relate to Mr. --

 9                    MR. LAURIE:  I think we can resolve it

10   this way.  We don't necessarily object to the

11   testimony.  We just object to that Claim Vision file

12   coming in as a full exhibit.  So we will withdraw the

13   testimony because it -- excuse me, we will withdraw

14   our objection --

15                    THE COURT:  Objection to the test --

16                    MR. LAURIE:  -- to the testimony.

17                    THE COURT:  Okay.

18                    MR. LAURIE:  But we will not withdraw

19   our objection to the document, if that makes any

20   sense.

21                    THE COURT:  Um-hum.  Okay.

22                    MR. LAURIE:  The only thing I want to

23   point out is I think the question refers in some

24   instances to Exhibit 48, so the jury may be wondering

25   what Exhibit 48 is.

1              THE COURT:  What is 48, yeah, yeah.

2              MR. LAURIE:  And that may be a concern.

3  So I think we may want to strike create an Exhibit 48

4  --

5              THE CLERK:  We can take out portions.

6              MR. LAURIE:  Exactly.

7              THE CLERK:  (Unintelligible) 48A, and

8  then if another witness is being examined on portions

9  of this that could be 48B.

10              MR. BRICKELL:  That's great.

11              MR. LAURIE:  Okay.  Yeah, we can do

12  that.

13              THE COURT:  Isn't she wonderful?

14              MR. SEIGER:  Yes, keep her around.

15              THE COURT:  I am doing that.  She's my

16  permanent Law Clerk.  I'd like to keep him around too

17  but I can't.  He's got other plans.

18              THE CLERK:  So I can give you a call

19  and let us know what stays in and what stays out, or

20  is it just all those objections where I have marked

21  relates to Exhibit 48, that stays in.

22              MR. LAURIE:  You can take out the

23  objections.  The testimony can stay in and just

24  renumber or --

25              MR. BRICKELL:  We'll give you a subset

```
 1   of Exhibit 48 which is 48A.

 2                  THE COURT:  Okay.

 3                  MR. SEIGER:  My only concern still

 4   comes down to that the jury is going to hear about

 5   Exhibit 48, so I think maybe we should mark this as

 6   Exhibit 48, the subset, if everybody is in agreement,

 7   just because I don't want the jury to be --

 8                  THE COURT:  Make it something

 9   different?  Yeah.

10                  MR. SEIGER:  Exactly.

11                  THE CLERK:  And then it can be 48A for

12   the next one.

13                  MR. SEIGER:  Right, right.

14                  THE COURT:  Okay.  Okay, sure.

15                  MR. SEIGER:  Okay.  Thank you.

16                  THE COURT:  Let's not confuse the jury

17   if we can help it.

18                  MR. SEIGER:  No.

19                  MR. BRICKELL:  So you don't need us

20   after lunch, right?

21                  THE COURT:  No.

22                  MR. BRICKELL:  Thank you.

23                  MR. SEIGER:  Thank you all very much.

24                  (Hearing concluded:  11:55 a.m.)

25
```

1                          <u>CERTIFICATE</u>

2

3                  I hereby certify that the foregoing 88

4     pages are a complete and accurate transcription to the

5     best of my ability of the electronic recording of the

6     PRETRIAL CONFERENCE in re:  THE ESTATE OF FREDERICK

7     MALI and LUCRETIA MALI vs. FEDERAL INSURANCE COMPANY,

8     Civil No. 3:06-CV-01475 (EBB) held before The Hon.

9     Ellen Bree Burns, USDJ Senior Judge, 141 Church

10    Street, New Haven, Connecticut, on July 13, 2011.

11

12    s/s_____          _____

13    Suzanne Benoit, Transcriber            Date

14

15

16

17

18

19

20

21

22

23

24

25